Jonathan **CORBETT,** Plaintiff,

v.

**TRANSPORTATION SECURITY ADMINISTRATION, et al.,** Defendants.

Case No. 12–20863–CV.

United States District Court, S.D. Florida.

Nov. 16, 2012.

1172

Jonathan Corbett Miami, FL, pro se.

Laura G. Lothman, U.S. Department of Justice Constitutional and Specialized Torts, Washington, DC, Robert Dominic Yates, Robert D. Yates, P.A., Robert Lon Teitler, Fort Lauderdale, FL, for Defendants.

### OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS (D.E. 30, 37, 41, 64) AND PLAINTIFF'S CROSS–MOTIONS FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT (D.E. 38, 46, 65)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendants Broward County, the United States of America, the Transportation Security Administration, Alejandro Chamizo, and Broward Sheriff Al Lamberti's Motions to Dismiss (D.E. 30, 5/22/2012; D.E. 37, 6/25/2012; D.E. 41, 7/19/2012; D.E. 64, 10/22/2012). Plaintiff Jonathan Corbett filed Responses in Opposition (D.E. 35, 6/6/12; D.E. 46, 8/3/2012; D.E. 38, 7/9/12; D.E. 65, 11/7/12), which included three purported Cross–Motions for Leave to Amend (see D.E. 38, 7/9/12; D.E. 46, 8/3/12; D.E. 65, 11/7/12). Defendants filed Replies (D.E. 36, 6/12/12; D.E. 49, 8/13/12; D.E. 42, 7/23/12; D.E. 68, 11/14/12), and Plaintiff filed one Sur–Reply (D.E. 45, 7/24/12). Having considered the referenced filings and the record, the Court finds as follows.

### I. Background

Plaintiff's First Amended Complaint alleges the following.

On August 27th, 2011, Plaintiff arrived at Fort Lauderdale–Hollywood International Airport in Broward County to board a commercial airline flight. (First Amended Complaint, D.E. 20 ¶¶ 23, 24, 26.)

Plaintiff proceeded to a Transportation Security Administration (TSA) checkpoint where he was required to submit to a security screening. (Id. ¶¶ 27, 28.)

At the checkpoint, Plaintiff was directed to a full-body scanner. (Id. ¶ 30.) A full-body scanner uses millimeter waves or similar electromagnetic radiation to create a nude image of a subject and detect metallic objects. (See id. ¶ 30.)

Plaintiff declined to go through the body scanner. (Id. ¶ 31.) TSA policy allows passengers to decline going through the scanner and to submit to a manual pat-down search instead. (Id. ¶¶ 32, 33.)

Plaintiff was informed by TSA personnel that he would be screened using a pat-down search. (Id. ¶ 34.) Plaintiff agreed to a pat-down search on the condition that the TSA screener not touch his private areas. (Id. ¶ 35.) A TSA screener informed Plaintiff that this condition was a problem. (Id. ¶ 36.) The screener summoned a TSA supervisor. (Id.) The supervisor informed Plaintiff that he would have to consent to having private areas touched or police would be called. (Id. ¶ 37.) Plaintiff reiterated that he would not consent to the touching of his private areas. (Id. ¶ 38.) The TSA supervisor summoned a Broward County sheriff as well as Defendant Chamizo, a TSA manager. (Id. ¶¶ 39, 41, 43.)

Chamizo arrived at the checkpoint and told Plaintiff that would have to consent to having his private areas touched. (Id. ¶ 44.) Chamizo told Plaintiff that if he did not consent, he would be forcibly searched and arrested. (Id. ¶¶ 45, 46.) Chamizo also told Plaintiff that he was not free to leave. (Id. ¶ 47.) Plaintiff's understanding at that point was that he was being detained. (Id. ¶ 48.)

Meanwhile, two TSA screeners searched Plaintiff's belongings, which consisted of a backpack and a plastic bag containing books. (*Id.* ¶¶ 50, 51.) One of the screeners found a stack of Plaintiff's credit cards and IDs. (*Id.* ¶ 55.) Plaintiff objected to the inspection of his credit cards, stating that the search exceeded TSA's objective of finding weapons, explosives, and incendiary devices. (*Id.* ¶ 56.) The screener responded that he was just making sure the names matched. (*Id.* ¶ 57.) Also during the search, a screener looked through one of Plaintiff's books. (*Id.* ¶ 59.) Plaintiff objected. (*Id.* ¶ 61.) The screener responded that he could look through Plaintiff's book if he wanted to. (*Id.* ¶ 62.)

Chamizo took Plaintiff's driver's license and boarding pass in order to photocopy them. (*Id.* ¶ 66.) Plaintiff did not provide consent for Chamizo to do so. (*Id.* ¶ 67.) TSA agents also furnished a copy of Plaintiff's driver's license to the Broward Sheriff's Office, and the Broward Sheriff's Office checked if Plaintiff had any outstanding warrants. (*Id.* ¶¶ 70, 72.)

The search of Plaintiff's belongings lasted more than thirty minutes. (*Id.* ¶ 52.) Plaintiff was subsequently "ejected" from the security checkpoint and denied access to his departure gate. (*Id.* ¶ 73.)

On August 29, 2011, Plaintiff requested, pursuant to the Freedom of Information Act and Florida's Public Records Act, that TSA and Broward County provide any documentation related to and any surveillance video footage of the security confrontation. (*Id.* ¶¶ 74, 75.) TSA responded by stating that it was not in possession of any video evidence, as it did not operate the cameras at Fort Lauderdale–Hollywood International Airport. (*Id.* ¶ 77.) Broward responded by stating that no video evidence existed, and even if it did, Broward had been informed by the TSA that any video footage would constitute sensitive security information not subject to public disclosure. (*Id.* ¶¶ 78, 80, 84.) TSA has since furnished to Plaintiff documentation and surveillance footage of the incident, though it has withheld certain documents and pixelated select video footage pursuant to several specified Freedom–of–Information–Act exemptions. (*See* TSA FOIA Response, D.E. 42–1 at 1–2; Plaintiff's Status Report, D.E. 50 at 1.)

Plaintiff filed this action *pro se* on March 2, 2012, alleging various civil rights violations, torts, Privacy–Act violations, and Freedom–of–Information–Act/Public–Records–Act violations. (*See* Complaint, D. E. 1.) Plaintiff's First Amended Complaint sets forth the following twenty-one counts against Defendants:

| Count | Defendant | Asserted Basis of Claim | Allegation |
| --- | --- | --- | --- |
| 1 | Chamizo | *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)/ Fourth Amendment | Unreasonable seizure of person |
| 2 | Chamizo | *Bivens*/Fourth Amendment | Unreasonable search of credit cards |
| 3 | Chamizo | *Bivens*/Fourth Amendment | Unreasonable search of book |
| 4 | Chamizo | Bivens/Fourth Amendment | Unreasonable "retaliatory" search |
| 5 | Chamizo | Civil Rights Act, 42 U.S.C. § 1983 | Deprivation of constitutional, federal, and state rights |
| 6 | United States | Federal Tort Claims Act, 28 U.S.C. § 1346/Florida state law | Civil assault by Chamizo |

| | | | |
|---|---|---|---|
| 7 | United States | Federal Tort Claims Act, 28 U.S.C. § 1346/Florida state law | False arrest by TSA agents |
| 8 | United States | Federal Tort Claims Act, 28 U.S.C. § 1346/Florida state law | False light invasion of privacy by TSA agents for publicly detaining Plaintiff and searching belongings |
| 9 | United States | Federal Tort Claims Act, 28 U.S.C. § 1346/Florida state law | Intentional infliction of emotional distress by TSA agents |
| 10–16 | TSA | Privacy Act, 5 U.S.C. § 552a(e)(3), (4), (5), (9), (10), (11), (12) | Failure to meet agency requirements when taking driver's license and boarding pass |
| 17 | TSA | Freedom of Information Act, 5 U.S.C. § 552, *et seq.* | Failure to respond to request for disclosure |
| 18 | Broward | Florida Public Records Act, Fla. Stat. § 119, *et seq.* | Failure to provide records as requested |
| 19 | United States | Federal Tort Claims Act, 28 U.S.C. § 1346/Florida state law | Civil conspiracy in denying Public Records Act request |
| 20 | Broward | Florida state law | Civil conspiracy in denying Public Records Act request |
| 21 | Broward Sheriff's Office | Florida Constitution | Unlawful search and seizure for accepting Plaintiff's driver's license and running warrant check |

(First Amended Complaint, D.E. 20 at 9–14.) Plaintiff seeks a myriad of compensatory, punitive, statutory, and nominal damages as well as declaratory and injunctive relief. (*See id.* at 15.)

## II. Motions

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (*See* Motions, D.E. 30, 37, 41, 64.) Defendants assert numerous grounds for dismissal which are discussed below.

In his Responses to Defendants' Motions to Dismiss, Plaintiff requests leave to amend his First Amended Complaint. (*See* D.E. 38, 46, 65.) Plaintiff's requests to amend are detailed below as well.

## III. Applicable Standards
### a. Rule 12(b)(6) Dismissal

■ Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (quoting *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir.1983)). To dismiss, it must "appear [ ] to a certainty, 'that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984)).

### b. Rule 12(b)(1) Dismissal

A challenge to the court's subject-matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). *See* Fed.R.Civ.P. 12(b)(1); *Newman v. William L. Gunlicks Irrevocable Trust,* 897 F.Supp.2d 1270, 1272–73 (M.D.Fla. 2012). Attacks on subject-matter jurisdiction come in two varieties, facial attacks and factual attacks. *Godiciu v. J.P. Morgan Chase Bank, N.A.,* 2012 WL 4370263, at *1 (S.D.Fla.2012). Facial attacks assert that the plaintiff's allegations, taken as true, fail to establish the court's jurisdiction. *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n. 5 (11th Cir.2003) (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)). Factual attacks, on the other hand, "challenge the court's jurisdiction in fact, irrespective of the pleadings." *Id.* In resolving factual challenges, the court may look outside the four corners of the complaint to determine if jurisdiction exists. *See id.*

### c. Amendment of Pleadings

Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, "[a] district court need not ... allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001). Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. *Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir.2004)). In addition, "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz,* 181 F.3d 1275, 1279 (11th Cir.1999). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould,* 554 F.3d 962, 967 (11th Cir.2009) (quoting *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1222 (11th Cir. 1999)).

### IV. Discussion

### a. Counts 1–5: Civil Rights Claims Against Chamizo

Chamizo moves to dismiss the counts asserted against him (Counts 1 through 5), in which Plaintiff alleges that the detention and search violated his Fourth Amendment rights. (*See* Chamizo Motion, D.E. 41 at 1.) Chamizo argues that the Court lacks jurisdiction over the claims, as they effectively challenge TSA's standard operating procedures, and all challenges to TSA administrative orders must be filed in the Court of Appeals. (*Id.* at 3–4.) Chamizo argues in the alternative that he cannot be held personally liable for approving of or overseeing the searches conducted by other TSA screeners. (*Id.* at 8.) Chamizo finally argues that he is entitled to qualified immunity, as Plaintiff's allegations fail to establish any violation of a clearly established constitutional right. (*Id.* at 5–15.)

Plaintiff responds that this Court has jurisdiction over his claims, for the challenged conduct went beyond TSA's standard operating procedures and therefore falls outside the scope of a final adminis-

trative order. (*See* Response to Chamizo, D.E. 46 at 3–7.) Plaintiff also argues that Chamizo is responsible for the actions of the other TSA screeners, as he was present and personally directing them at the time of the searches. (*Id.* at 19.) Plaintiff moves in the alternative to amend his Complaint naming the individual TSA screeners as defendants. (*Id.* at 20.) Plaintiff further maintains that Chamizo is not entitled to qualified immunity because the detention and search violated Plaintiff's clearly established Fourth Amendment rights. (*Id.* at 9–19.)

The Court finds Chamizo's qualified-immunity argument dispositive and will thus assume, for the purposes of this Order, that the Court has jurisdiction over Plaintiff's claims and that Chamizo is accountable for the conduct of all TSA screeners at the security checkpoint.

▇▇▇▇ Pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), federal officials acting under color of federal law may be sued in their individual capacities for violating an individual's constitutional rights. *Id.* at 397, 91 S.Ct. 1999; *Micklas v. Doe*, 450 Fed.Appx. 856, 857 (11th Cir.2012). To state a claim for relief in accordance with *Bivens*, a plaintiff must allege that a federal agent, by act or omission under color of federal authority, deprived him of a right, privilege, or immunity secured by the United States Constitution. *See, e.g., Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990).

▇▇▇▇ Under certain circumstances, public officers are entitled to qualified immunity from liability in *Bivens* suits. *See Johnson v. Fankell*, 520 U.S. 911, 914, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

▇▇▇▇ Assessing whether a government official is entitled to qualified immunity involves determination of (1) whether the facts that a plaintiff has alleged or shown establish the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

▇▇▇▇ The relevant inquiry in evaluating whether a right is "clearly established" is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202, 121 S.Ct. 2151. In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir.1998) (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir.1997)).

▇▇▇▇ While *Saucier's* two-step sequence for analyzing qualified-immunity defenses is often appropriate, it is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236, 129 S.Ct. 808. "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious

whether in fact there is such a right." *Id.* at 237, 129 S.Ct. 808.

Plaintiff's civil-rights claims are predicated on alleged violations of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

 Under the Fourth Amendment, searches "conducted without a warrant issued upon probable cause [are] per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (internal quotation marks omitted).

 One exception to the warrant/probable-cause requirement has been established for administrative searches. *See New York v. Burger,* 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987); *United States v. Biswell,* 406 U.S. 311, 315, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Bruce v. Beary,* 498 F.3d 1232, 1239 (11th Cir. 2007). These searches are permissible without a warrant when: (1) a substantial government interest informs the regulatory scheme under which the search is made; (2) the search is necessary to further the regulatory scheme; and (3) the governing statute's inspection program is a "constitutionally adequate substitute for a warrant." *Burger,* 482 U.S. at 702–04, 107 S.Ct. 2636. The constitutionality of administrative searches is not dependent upon the consent of the person being searched. *See Biswell,* 406 U.S. at 315, 92 S.Ct. 1593.

 "[A]irport screening searches ... are constitutionally reasonable administrative searches because they are 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weap-ons or explosives aboard aircraft, and thereby to prevent hijackings.'" *United States v. Aukai,* 497 F.3d 955, 960 (9th Cir.2007) (quoting *United States v. Davis,* 482 F.2d 893, 908 (9th Cir.1973)); *accord United States v. Hartwell,* 436 F.3d 174, 179–81 (3d Cir.2006) (holding airport searches "permissible under the administrative search doctrine because the State has an overwhelming interest in preserving air travel safety, and the procedure is tailored to advance that interest while proving to be only minimally invasive"); *see also City of Indianapolis v. Edmond,* 531 U.S. 32, 47–48, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (acknowledging the "validity of ... searches at places like airports"); *Chandler v. Miller,* 520 U.S. 305, 323, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) (noting that "searches now routine at airports" are reasonable).

 An airport security screening search is reasonable as long as it "is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives" and it is "confined in good faith to that purpose." *Aukai,* 497 F.3d at 962 (quoting *Davis,* 482 F.2d at 913).

 Once a traveler presents himself for screening at an airport security checkpoint, he may not avoid being searched by retreating and attempting to leave. *United States v. Herzbrun,* 723 F.2d 773, 776 (11th Cir.1984) (citing *United States v. Skipwith,* 482 F.2d 1272 (5th Cir.1973)). "Such an option would constitute a one-way street for the benefit of a party planning airport mischief, since there is no guarantee that if he were allowed to leave he might not return and be more successful." *Id.* (quoting *Skipwith,* 482 F.2d at 1281 (Aldrich, J., dissenting)).

 Furthermore, agents may briefly detain a traveler for purposes of complet-

ing a security search. *See Aukai,* 497 F.3d at 962–63 (finding eighteen-minute detention reasonable, "because it was not prolonged beyond the time reasonably required to rule out the presence of weapons or explosives").

In addressing the bounds of a permissible airport screening, at least one jurisdiction has noted that " 'sheet explosives' may be disguised as a simple piece of paper or cardboard, and may be hidden in just about anything, including a laptop, book, magazine, deck of cards, or packet of photographs." *United States v. McCarty,* 648 F.3d 820, 825 (9th Cir.2011) (thus upholding as reasonable airport screener's inspection of passenger's photos). *But see United States v. Fofana,* 620 F.Supp.2d 857, 863 (S.D.Ohio 2009) (finding inspection of envelopes and passports unreasonable, where by screener's own admissions, search went beyond the purpose of detecting weapons/explosives and was motivated by desire to find evidence of criminal wrongdoing).

Also noteworthy is that as long as (1) the screening is undertaken pursuant to a legitimate administrative search scheme; (2) the searcher's actions are cabined to the scope of the permissible administrative search; and (3) there is no impermissible programmatic secondary motive for the search, then the development of a second, subjective motive on the part of the individual searcher is irrelevant for purposes of Fourth Amendment analysis. *McCarty,* 648 F.3d at 834–35.

Consistent with the foregoing, the Court concludes that Chamizo is entitled to qualified immunity on all claims asserted against him, for assuming without finding that Plaintiff's detention and search somehow violated his Fourth Amendment rights, the Court cannot say on the facts alleged that the rights at issue were clearly established. In light of the referenced authority, and in the absence of any mandatory authority holding to the contrary, the Court finds that it would not be clear to an officer in Chamizo's position that detaining Plaintiff and inspecting his belongings would be unconstitutional. Chamizo could reasonably have concluded that **(A)** Plaintiff presented himself for screening at the security checkpoint and thus submitted to an administrative search of his belongings, *see Burger,* 482 U.S. at 702, 107 S.Ct. 2636; *Biswell,* 406 U.S. at 315, 92 S.Ct. 1593; *Herzbrun,* 723 F.2d at 776; *Beary,* 498 F.3d at 1239; *cf. Aukai,* 497 F.3d at 960; *Hartwell,* 436 F.3d at 179–81, **(B)** TSA could lawfully search through Plaintiff's book, credit cards, and IDs for the purpose of finding explosive materials, *cf. Aukai,* 497 F.3d at 962; *McCarty,* 648 F.3d at 825, 838, and **(C)** TSA agents could detain Plaintiff while completing their inspection, *cf. Aukai,* 497 F.3d at 962–63; *Herzbrun,* 723 F.2d at 776. And although Chamizo allegedly stated that Plaintiff would be forcibly searched and arrested if he did not submit to a full pat-down search, there are no allegations that Plaintiff was in fact forcibly searched or arrested. TSA detained Plaintiff while the administrative search was conducted and allowed him to leave the checkpoint once the search was complete.

 As for Plaintiff's claim that the search was "retaliatory" in nature and therefore violated his Fourth Amendment rights, the Eleventh Circuit has made clear that no independent claim for retaliation exists under the Fourth Amendment. *See Wood v. Kesler,* 323 F.3d 872, 883 (11th Cir.2003) ("Wood also asserts a § 1983 retaliation claim based on Kesler's conduct. Although Wood attempts to rely on the Fourth Amendment, there is no retaliation claim under the Fourth Amendment separate and distinct from Wood's

malicious prosecution and false arrest claims."); *Rehberg v. Paulk,* 611 F.3d 828, 850 (11th Cir.2010) ("As we explain above, it was not clearly established that the subpoenas to Rehberg's phone and email providers violated his Fourth Amendment rights. We also are inclined to agree with the government that Hodges and Paulk's retaliatory animus does not create a distinct constitutional tort.").

For these reasons, the Court finds that Chamizo is entitled to qualified immunity on Counts 1 through 5, and the Court therefore grants Chamizo's Motion to Dismiss. The Court likewise denies Plaintiff's purported Cross–Motion to Amend his Complaint and substitute the individual TSA screeners as defendants, as any such amendment would be futile.

### b. Counts 6–9: Tort Claims Against the United States

 The United States and TSA move jointly to dismiss Plaintiff's tort claims of civil assault, false arrest, false light invasion of privacy, and intentional infliction of emotional distress (Counts 6 through 9). (*See* USA/TSA Motion, D.E. 37 at 1.) The United States and TSA argue, in relevant part, that Plaintiff's claims are barred by sovereign immunity. (*Id.* at 3.) They also note that the tort of "invasion of privacy via false light" is not recognized under Florida state law. (*Id.* at 10.)

Plaintiff responds that the United States is not entitled to sovereign immunity on his intentional-tort claims because TSA agents are "investigate or law enforcement officers" to whom sovereign immunity does not apply. (*See* Response to USA/TSA, D.E. 38 at 3–6.) Plaintiff acknowledges that "invasion of privacy via false light" is not a cognizable tort in Florida and requests leave to amend his Complaint to allege "defamation" instead. (*Id.* at 16.)

 In order for a suit to proceed against the United States, a waiver of sovereign immunity must exist. *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

The Federal Torts Claims Act sets forth a limited waiver of sovereign immunity, allowing private citizens to bring claims against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

However, this waiver does not apply to "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," unless the claim is asserted against "investigative or law enforcement officers of the United States Government." *Id.* § 2680(h). An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

Several courts have addressed whether TSA agents are "investigative or law enforcement officers" for purposes of Section 2680(h), and the prevailing conclusion is that they are not. *See Weinraub v. United States,* 927 F.Supp.2d 258, 266 (E.D.N.C.2012) ("[T]he court concludes that the limited, consensual searches conducted by TSA screeners do not bring them within the definition of 'investigative or law enforcement officers' and, there-

fore, do not implicate the law enforcement proviso of § 2680(h)."); *Coulter v. United States Dep't of Homeland Sec.,* Case No. 07–4894, 2008 WL 4416454, at *7 (D.N.J. Sept. 24, 2008) ("The TSA argues, and this Court agrees, that airport security screeners do not constitute investigative or law enforcement officials within the meaning of the FTCA."); *Welch v. Huntleigh USA Corp.,* Case No. 04–663, 2005 WL 1864296, at *5 (D.Or. Aug. 4, 2005) ("Since the Huntleigh screeners were only able to perform consensual searches, and had no authority to arrest, they cannot be considered law enforcement officers for the purpose of the FTCA."). *But see Pellegrino v. United States Transp. Sec. Admin.,* 855 F.Supp.2d 343, 357 (E.D.Pa.2012) (finding discovery necessary to resolve whether TSA agents were authorized to execute searches, seize evidence, or make arrests such that the United States might be liable for intentionally tortious conduct under Section 2680(h)). As the district court in *Weinraub* summarized:

> TSA screeners perform limited, consensual searches that are administrative in nature. *See* 49 U.S.C. § 44901 (requiring the screening of all passengers and property); § 44902 (requiring passengers to consent to a search to establish whether a passenger is carrying, or the property of a passenger contains, a dangerous weapon, explosive, or other destructive substance); 49 C.F.R. § 1540.107 (requiring submission to screening and inspection of persons and property). *See also Welch v. Huntleigh USA Corp.,* No. 04–663 KI, 2005 WL 1864296, at *5 (D.Or. Aug. 4, 2005) ("[TSA] screeners are able to conduct consensual administrative searches for items which are prohibited entry into the airport's sterile areas. Screeners do not have the authority to detain individuals and must call law enforcement officers to search, seize, and arrest individuals if illegal items are found.").

However, the phrase "to execute searches," when considered within the broader context of the law enforcement proviso, does not contemplate the types of searches performed by TSA screeners.

Congress chose to define "investigative or law enforcement officer," for purposes of the law enforcement proviso, to include officers that perform any one of three functions: the execution of searches, the seizure of evidence, or the making of arrests. 28 U.S.C. § 2680(h). Each of these are commonly understood to be traditional law enforcement functions performed by the likes of FBI agents, Bureau of Prisons officers, postal inspectors, and INS agents, all of which have broad investigative and law enforcement powers and have been found to fall within the law enforcement proviso. *See, e.g., Medina v. United States,* 259 F.3d 220, 224 (4th Cir.2001) (INS agents—citing 8 U.S.C. § 1357, which confers broad power to search and arrest without a warrant); *Harms v. United States,* No. 91–2627, 972 F.2d 339, 1992 WL 203942, at *6 (4th Cir. Aug. 24, 1992) (unpubl. op.) (postal inspectors—citing 39 C.F.R. § 233.1(a), which confers broad power to arrest without a warrant). These traditional investigative or law enforcement officers have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances, which stands in stark contrast to the TSA screener's power that is limited to pre-boarding searches for certain prohibited items. *See United States v. McCarty,* 648 F.3d 820, 831 (9th Cir.2011) ("[O]nce a[n] [airport] search is conducted for a criminal investigatory purpose, it can no longer be justified under an administrative search rationale.... [T]he constitutional

bounds of an airport administrative search require that the individual screener's actions be no more intrusive than necessary to determine the existence or absence of explosives that could result in harm to the passengers and aircraft.") (citation omitted). Therefore, it would be unreasonable to interpret "to execute searches" to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (*i.e.*, seizure of evidence and arrest) that Congress chose to define "investigative or law enforcement officers." *See Welch*, 2005 WL 1864296, at *5 (concluding that screeners were not law enforcement officers because they could only perform consensual searches and could not seize evidence or make arrests) (citing *Wilson v. United States*, 959 F.2d 12, 15 (2d Cir.1992) ("Because the power to seize evidence depends on the consent of the person from whom the evidence is to be taken, however, parole officers lack the seizure power contemplated by section 2680(h), and thus cannot be considered law enforcement personnel.")). *Cf. Matsko v. United States*, 372 F.3d 556, 560 (3rd Cir.2004) ("[E]mployees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception.") (citation omitted)). As a result, the court concludes that TSA screeners are not "empowered by law to execute searches" for purposes of § 2680(h) and that, therefore, they are not "investigative or law enforcement officers." Thus, the law enforcement proviso to the intentional torts exception does not apply to TSA....

927 F.Supp.2d at 262–63.

■ Finally, "the exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where 'the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim.'" *O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir.2001) (quoting *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir.1986)).

In line with the foregoing, the Court finds that Plaintiff's tort claims against the United States are barred by sovereign immunity. The Court follows *Weinraub, Coulter*, and *Welch* and concludes that TSA agents are not "investigative or law enforcement officers" for purposes of Section 2680(h). The Court thus finds that the Federal Tort Claims Act does not waive sovereign immunity with respect to intentional tort claims challenging the conduct of TSA agents. Moreover, the Court finds that Plaintiff's invasion-of-privacy and intentional-infliction-of-emotional-distress claims are derivative of his assault and false-arrest claims—*i.e.*, they hinge on the same underlying governmental conduct—and are therefore precluded by Section 2680(h) as well.

On this basis the Court grants the United States and TSA's Motion to Dismiss as to Counts 6 through 9. The Court likewise denies Plaintiff's purported Cross–Motion for leave to substitute "defamation" for false light invasion of privacy, as any such amendment would be purely semantic and futile.

### c. Counts 10–16: Privacy–Act Claims Against TSA

■ The United States and TSA also move to dismiss Plaintiff's Privacy–Act Claims (Counts 10 through 16), in which Plaintiff alleges that the TSA violated the Privacy Act by copying his driver's license and boarding pass and sharing those copies with the Broward Sheriff's Office. (*See* USA/TSA Motion, D.E. 37 at 13.) The

United States and TSA argue, in relevant part, that Plaintiff is not entitled to monetary relief on his claims because he has failed to allege any actual damages stemming from the supposed Privacy–Act violations. (*Id.* at 14.)

Plaintiff argues that he has been adversely affected by the alleged Privacy–Act violations and is entitled to monetary damages. (*See* Response to USA/TSA, D.E. 38 at 11.) Plaintiff further argues that regardless, he also seeks and is entitled to injunctive relief on his claims. (*Id.* at 12.)

■ The Privacy Act "governs the government's collection and dissemination of information and maintenance of its records [and] generally allows individuals to gain access to government records on them and to request correction of inaccurate records." *Perry v. Bureau of Prisons,* 371 F.3d 1304, 1304–05 (11th Cir.2004) (citing *Gowan v. U.S. Dep't of the Air Force,* 148 F.3d 1182, 1187 (10th Cir.1998)). The Act creates causes of action for, *inter alia,* an agency's denial of access to records, an agency's failure to maintain its records with accuracy, relevance, timeliness, and completeness to assure fairness in determinations, and an agency's failure to comply with any other Privacy Act provision which causes an "adverse effect on an individual." *Gowan,* 148 F.3d at 1187. The Act vests district courts with jurisdiction to hear civil actions brought against agencies alleged to have violated its provisions. 5 U.S.C. § 552a(g)(1)(C).

The Privacy–Act subsections on which Plaintiff bases his claims provide as follows:

(e) **Agency requirements.**—Each agency that maintains a system of records shall:

＊　　＊　　＊　　＊　　＊　　＊

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D) the effects on him, if any, of not providing all or any part of the requested information;

(4) subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—

(A) the name and location of the system;

(B) the categories of individuals on whom records are maintained in the system;

(C) the categories of records maintained in the system;

(D) each routine use of the records contained in the system, including the categories of users and the purpose of such use;

(E) the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;

**(F)** the title and business address of the agency official who is responsible for the system of records;

**(G)** the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;

**(H)** the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and

**(I)** the categories of sources of records in the system;

**(5)** maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

\* \* \* \* \* \*

**(9)** establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;

**(10)** establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained;

**(11)** at least 30 days prior to publication of information under paragraph

**(4)(D)** of this subsection, publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency; and

**(12)** if such agency is a recipient agency or a source agency in a matching program with a non-Federal agency, with respect to any establishment or revision of a matching program, at least 30 days prior to conducting such program, publish in the Federal Register notice of such establishment or revision.

5 U.S.C.A. § 552a(e).

The Supreme Court has made clear that a plaintiff must show some actual damages in order to qualify for monetary relief under the Privacy Act. *Doe v. Chao*, 540 U.S. 614, 616, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004). A plaintiff may not recover monetary damages on proof of nothing more than a statutory violation. *Id.* at 620, 124 S.Ct. 1204.

Moreover, injunctive relief is available under the Act in only two categories of cases: suits to amend a record, 5 U.S.C. § 552a(g)(2), and suits for access to a record, *id.* § 552a(g)(3). *Chao*, 540 U.S. at 635, 124 S.Ct. 1204 (Ginsburg, J., dissenting); *see also Clarkson v. IRS*, 678 F.2d 1368, 1375 n. 11 (11th Cir.1982) ("The Privacy Act expressly provides for injunctive relief for only two types of agency misconduct, that is, wrongful withholding of documents ... and wrongful refusal to amend an individual's record....").

In line with the foregoing, the Court concludes that Plaintiff's Privacy–Act counts fail to state claims upon which relief can be granted. Plaintiff's claims allege only that "Defendant TSA, through its employee, collected personal information from

CORBETT, including photocopies of his driver's license and boarding pass," "5 U.S.C. § 552a(e) prescribes many requirements for federal agencies that collect personal information from individuals," "[b]ased on the facts described above, the TSA failed to meet all of the following subsection requirements of 5 U.S.C. 552a(e): 3, 4, 5, 9, 10, 11, 12," and "[e]ach of these subsections is individually charged as a violation of 5 U.S.C. § 552a(e)." (First Amended Complaint, D.E. 20 ¶ 131–34.) Plaintiff alleges no actual damages separate and apart from the statutory violations themselves. Plaintiff's claims are thus insufficient to entitle him to any monetary award. Furthermore, Plaintiff seeks neither the amendment of nor the disclosure of records under 5 U.S.C. § 552a(g)(2) or (3). Accordingly, injunctive relief is not available on Plaintiff's claims either.

On this basis the Court finds that Plaintiff's Privacy–Act counts fail to state claims upon which any relief can be granted, and the Court therefore grants the United States and TSA's Motion to Dismiss as to Counts 10 through 16.

### d. Count 17: Freedom–of–Information–Act Claim Against TSA

■ The United States and TSA also move to dismiss as moot Plaintiff's Freedom–of–Information–Act (FOIA) claim (Count 17). (*See* USA/TSA Motion, D.E. 37 at 1 n. 2.) They argue that TSA has now responded to Plaintiff's information request and tendered both documents and surveillance footage, subject to certain FOIA exemptions. (*See* USA/TSA Reply, D.E. 42 at 8–9; *see also* TSA FOIA Response, D.E. 42–1 at 1–2.)

Plaintiff argues that his FOIA claim is not moot, for although TSA has responded to his request and sent documentation and video footage of the subject incident, TSA has improperly redacted several materials and not furnished all requested, disclosable records. (*See* Response to USA/TSA, D.E. 38 at 13; Plaintiff's Status Report, D.E. 50 at 1.)

■ The Freedom of Information Act (FOIA) requires disclosure of government records to individuals who follow the outlined procedures for requesting information, unless the requested information falls within one of nine statutory exceptions. 5 U.S.C. § 552(b). A district court has jurisdiction over a complaint brought under the FOIA "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). Jurisdiction under this statute is based upon the plaintiff's showing that an agency has "improperly withheld agency records." *Brown v. DOJ,* 169 Fed.Appx. 537, 540 (11th Cir.2006).

■ Courts generally hold that once an agency releases the documents responsive to a FOIA request, subject matter jurisdiction over a claim for injunctive relief under FOIA ceases to exist. *See Bonilla v. DOJ,* Case No. 11–20450, 2012 WL 204202, at *2 (S.D.Fla. Jan. 24, 2012); *see also Pavlenko v. IRS,* Case No. 08–61534, 2009 WL 1465463, at *1 (S.D. Fla. Apr. 1, 2009) (dismissing case for lack of subject matter jurisdiction where agency presented affidavits and exhibits demonstrating that it produced all responsive documents to plaintiff); *Sands v. United States,* Case No. 94–0537, 1995 WL 552308, *3 (S.D.Fla. Jun. 19, 1995) ("If upon initiation of a law suit it is determined that no documents responsive to a FOIA request have been withheld, the litigation should be dismissed as the claim for relief under FOIA becomes moot."); *cf. Chilivis v. SEC,* 673 F.2d 1205, 1210 (11th Cir.1982) (because the agency had processed the requested

 and instructed plaintiff to make arrangements to view the records, motion regarding release of documents became moot).

 However, "in 'instances where an agency has released documents, but other related issue[s] remain unresolved, courts frequently will not dismiss the action' as moot." *McKinley v. FDIC*, 756 F.Supp.2d 105, 110 (D.D.C.2010) (quoting *Guide to the Freedom of Information Act*, U.S. DOJ Office of Information Policy, 767–68 & n. 180 (2009 ed.)); *see also Nw. Univ. v. USDA*, 403 F.Supp.2d 83, 85–86 (D.D.C. 2005) (refusing to dismiss action as moot despite belated release of documents because plaintiff challenged adequacy of defendant's document production).

Here, although TSA maintains that it has tendered all nonexempt records requested, Plaintiff insists that additional materials are subject to disclosure and that the materials disclosed thus far have been improperly redacted. Based on the present record, the Court cannot say that TSA has disclosed all nonexempt materials in accordance with FOIA. The Court therefore finds that Plaintiff's FOIA claims are not moot. *See, e.g., McKinley*, 756 F.Supp.2d at 111 ("FOIA requesters have a cognizable interest in having the Court determine (1) whether the search for records was adequate under the standards for adequate records searches required by FOIA, and (2) whether the agency has released all nonexempt material. Although the agency has released portions of certain agency documents, these additional issues remain in dispute, and the Court has jurisdiction to hear these claims." (citations omitted)).

On this basis the Court denies the United States and TSA's Motion to Dismiss as to Count 17.

### e. Count 18: Florida–Public–Records–Act Claim Against Broward County

 Broward moves to dismiss Count 18, in which Plaintiff alleges that Broward improperly denied his request under the Florida's Public Records Act and falsely stated that the requested records did not exist. (*See* Broward Motion, D.E. 30 at 4.) Broward argues that Plaintiff cannot establish any improper nondisclosure under the Public Records Act, as the evidence requested by Plaintiff from Broward was sensitive security information and the TSA directed Broward to withhold it. (*Id.* at 4– 6.) Broward further argues that it did not "lie" in denying the existence of the records sought. (*Id.*) Broward maintains that it was required by the TSA to deny the existence of any video footage, because the existence itself constituted sensitive security information. (*Id.*)

Plaintiff responds that Broward's alleged reliance on TSA's directives presents an issue of fact which is unresolvable at the motion-to-dismiss stage, and at any rate, Broward's reliance on TSA would not absolve Broward of liability for improper nondisclosure. (Response to Broward, D.E. 35 at 9.) Plaintiff further maintains that under the Public Records Act, Broward was not permitted to falsely deny the existence of the records requested. (*Id.* at 5.)

Florida's Public Records Act provides that "[i]t is the policy of [the state of Florida] that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency." Fla Stat. § 119.01(1).

The Act provides that "[i]f a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that such agency unlawfully refused to permit a public record to be

inspected, examined, or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees." *Id.* § 119.12(1).

Here, Plaintiff's Public–Records–Act count alleges that "BROWARD was properly served a Public Records Act request," "BROWARD's response knowingly contained false statements; to wit, that records did not exist when they did," "BROWARD refused to correct the false statements and provide the records," and "[t]he records are not exempt from disclosure." (First Amended Complaint, D.E. 13, at 13.) Based only on the allegations set forth in the Complaint, the Court is unable to say that Broward's representations and nondisclosures were permissible and that Plaintiff is unable to sustain a claim under the Public Records Act. For these reasons, as well as those articulated in subsection d, *supra,* the Court finds dismissal of Plaintiff's claim inappropriate at this juncture. *See, e.g., Johnson v. Jarvis,* 74 So.3d 168, 170–71 (Fla.Dist.Ct. App.2011).

On this basis the Court denies Broward's Motion to Dismiss as to Count 18.

### f. Counts 19 and 20: Civil Conspiracy Claims Against United States and Broward County

The United States and Broward each move to dismiss Plaintiff's civil-conspiracy claims (Counts 19 and 20), in which Plaintiff alleges that Defendants unlawfully conspired to deny his request for records under the Public Records Act. (*See* USA/TSA Motion, D.E. 37 at 11; Broward Motion, D.E. 30 at 6.) Broward notes in particular that "there can be no action, as a matter of law, based on the County 'conferring' with TSA with respect to the subject records request. The Code of Federal Regulations, [49] § 1520.5 and § 1520.15, *mandates* such an interaction in the deter-

mination of what constitutes [sensitive security information]." (Broward Motion, D.E. 30 at 7.)

■ Plaintiff responds that the Complaint plausibly alleges the existence of a civil conspiracy. (*See* Response to USA/TSA, D.E. 38 at 25; Response to Broward, D.E. 35 at 12.) Plaintiff argues that "[w]hen considering the circumstances in the light most favorable to Plaintiff, there is no leap of logic required to take the set of facts articulated in the complaint and conclude that the TSA told Broward County that they were prohibited from disclosing the existence of public records, even though they were aware that there was no lawful basis to deny the existence of public records." (Response to USA/TSA, D.E. 38 at 16.)

■ To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1271 (11th Cir.2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So.2d 1157, 1159–60 (Fla.Dist.Ct.App.2008)).

■ A civil-conspiracy claim must "set forth clear, positive, and specific allegations of civil conspiracy." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group, Inc.,* 79 So.3d 855 (Fla.Dist.Ct.App.2012). "General allegations of conspiracy are inadequate." *World Class Yachts, Inc. v. Murphy,* 731 So.2d 798, 799 (Fla.Dist.Ct. App.1999).

The TSA is vested with the authority to designate information as "sensitive security information" pursuant to 49 U.S.C.

§ 114(s) and 49 C.F.R. § 1520. *MacLean v. Dep't of Homeland Sec.,* 543 F.3d 1145, 1150 (9th Cir.2008).

Here the Court finds that Plaintiff fails to state actionable civil-conspiracy claims. Plaintiff alleges only that "[t]he TSA and BROWARD conferred with each other regarding BROWARD's response to COR-BETT's Public Records Act request," "[a]s a result of this collusion, BROWARD intentionally lied to CORBETT regarding the existence of responsive records," and "[t]he above effect was the intention of both parties." (First Amended Complaint, D.E. 20 ¶ 143–45.) The Court finds these allegations too nonspecific and insufficient to sustain any inference that TSA and Broward reached an agreement to act unlawfully. As Broward points out, it was essentially obligated to consult with TSA to determine whether the records requested by Plaintiff constituted sensitive security information not subject to public disclosure.

For these reasons the Court finds that Plaintiff's civil-conspiracy allegations fail to state claims upon which relief can be granted, and the Court therefore grants the United States and TSA's Motion to Dismiss as to Count 19 and grants Broward's Motion to Dismiss as to Count 20.

**g. Count 21: State Constitutional Claim of Unlawful Search and Seizure Against Broward Sheriff's Office**

█ Broward Sheriff Al Lamberti moves to dismiss the single count asserted against the Broward Sheriff's Office (Count 21), in which Plaintiff alleges that the Sheriff's Office violated Plaintiff's state constitutional protections against unreasonable search and seizure by accepting Plaintiff's driver's license and running a warrant check. (*See* BSO Motion, D.E. 64 at 1.) Lamberti first notes that there is no such legal entity as the Broward Sheriff's

"Office," and that this alleged party should be terminated accordingly. (*Id.* at 2–3.) Lamberti further argues that Plaintiff's claim should be dismissed because Plaintiff failed to provide written notice of the claim to the Broward Sheriff and the Florida Department of Financial Services in accordance with Florida's sovereign immunity statute. (*Id.* at 3.) Finally, Lamberti argues that Plaintiff fails to allege any unreasonable conduct on the part of the Broward Sheriff. (*Id.* at 3–6.)

Plaintiff responds that the Broward Sheriff's Office is a legal entity and is a properly-named defendant in this action. (Response to Lamberti, D.E. 65 at 5.) Plaintiff also argues that he was not required to submit notice of his claim to the Broward Sheriff and the Florida Department of Financial Services under Florida's sovereign immunity statute, as his cause of action is a "state constitutional claim" and not a "common-law tort." (*Id.* at 7.) Plaintiff further maintains that the Broward Sheriff acted unlawfully by accepting Plaintiff's identification and checking for warrants without consent or reasonable suspicion. (*Id.* at 3.) Plaintiff requests in the alternative for leave to amend his Complaint "to replace the Broward Sheriff's Office with the individual sheriff who interacted with Plaintiff, to modify the related charge (Count 21) from a Florida constitutional violation to a federal Civil Rights Act violation, and to modify the prayer for relief accordingly." (*Id.* at 8.)

Lamberti notes in reply that state-constitutional claims for money damages are non-cognizable in Florida. (Lamberti Reply, D.E. 68 at 3–4.)

█ In Florida, "no cause of action exists for money damages for a violation of a state constitutional right." *Depaola v. Town of Davie,* 872 So.2d 377, 380 (Fla. Dist.Ct.App.2004) (citing *Garcia v. Reyes,*

697 So.2d 549, 549–50 (Fla.Dist.Ct.App. 1997)); *see also Holcy v. Flagler Cnty. Sheriff,* Case No. 3:05–cv–1324–J–32HTS, 2007 WL 2669219, at \*6 (M.D.Fla. Sept. 6, 2007) ("To the extent plaintiff seeks relief in Count I under Article I, section 12 of the Florida Constitution …, the Court finds such avenue is likewise unavailing. Florida constitutional claims do not support claims for damages absent a separate enabling statute …." (citing *Garcia,* 697 So.2d at 549–50)).

Here, Plaintiff characterizes his claim against the Broward Sheriff as a "state constitutional claim" as opposed to a common-law tort. Plaintiff seeks only money damages for the Broward Sheriff's alleged violations of his Article 1, section 12 rights. (*See* First Amended Complaint, D.E. 20 at 15.) In line with the foregoing, the Court concludes that Plaintiff's state-constitutional claim for money damages is non-actionable under Florida law.

On this basis the Court grants Lamberti's Motion to Dismiss. The Court also denies Plaintiff's purported Cross–Motion for Leave to Amend, as substituting the Broward Sheriff's Office as defendant would be futile, and Plaintiff's request "to modify the related charge … from a Florida constitutional violation to a federal Civil Rights Act violation, and to modify the prayer for relief accordingly" is vague, unsupported by a proposed amended pleading, and not properly raised. *See Long,* 181 F.3d at 1279; *Rosenberg,* 554 F.3d at 967; *Posner,* 178 F.3d at 1222.

## V. Conclusion

It is accordingly **ORDERED AND ADJUDGED** that:

1. Defendant Alejandro Chamizo's Motion to Dismiss (D.E. 41, 7/19/2012) is **GRANTED;**

2. Defendants United States of America and the Transportation Security Administration's Motion to Dismiss (D.E. 37, 6/25/2012) is **GRANTED AS TO COUNTS 6–16 AND 19** and **DENIED AS TO COUNT 17;**

3. Defendant Broward County's Motion to Dismiss (D.E. 30, 5/22/2012) is **GRANTED AS TO COUNT 20** and **DENIED AS COUNT 18;**

4. Defendant Broward Sheriff Al Lamberti's Motion to Dismiss (D.E. 64, 10/22/2012) is **GRANTED;**

5. **COUNTS 1–16** and **19–21** of Plaintiff Jonathan Corbett's First Amended Complaint (D.E. 20) are **DISMISSED;** and

6. Plaintiff Jonathan Corbett's purported Cross–Motions for Leave to Amend (D.E. 38, 7/9/12; D.E. 46, 8/3/12; D.E. 65, 11/7/12) are **DENIED.**