**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT J. MACLEAN,
                    *Petitioner,*

v.

DEPARTMENT OF HOMELAND
SECURITY,
                    *Respondent.*

No. 06-75112

MSPB No.
0752-06-0611

OPINION

On Petition for Review of an Order of the
Transportation Safety Administration

Argued and Submitted
July 17, 2008—San Francisco, California

Filed September 16, 2008

Before: Jerome Farris, Eugene E. Siler, Jr.,* and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

12997

## COUNSEL

Peter H. Noone, Esq., Avery, Dooley, Post & Avery, LLP, Belmont, Massachusetts, for Robert J. MacLean, petitioner.

Eric Fleisig-Greene (argued), Appellate Staff, Department of Justice, Civil Division, Washington, D.C.; Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, D.C.; and Douglas N. Letter, Appellate Staff, Department of Justice, Civil Division, Washington, D.C., for the Department of Homeland Security, respondent.

## OPINION

PER CURIAM:

Robert J. MacLean petitions for review of an order issued by the Transportation Safety Administration. He contends that the order violates: (1) the TSA's own regulations, (2) the Whistleblower Protection Act, (3) the Anti-Gag statute, (4) due process, and (5) the rule against retroactive administrative adjudication. We deny the petition.

## BACKGROUND

In late July, 2003, while working as a Federal Air Marshal in Nevada, MacLean received a text message on his government-issued cell phone stating that "all RON (Remain Overnight) missions . . . up to August 9th would be cancelled." This message indicated to MacLean that there would be no Federal Air Marshals on overnight flights from the time of

the text message up to August 9, 2003. MacLean believed that the cancellation of these missions was detrimental to public safety. He raised this concern with his supervisor, who did not make further inquiry. MacLean then attempted unsuccessfully to alert the Office of Inspector General. On July 29, 2003, MacLean disclosed the text message to members of the press. The Federal Air Marshal Service later confirmed that the text message's contents did not reflect a final decision of its director and there was no cancellation of overnight missions.

On September 13, 2005, the Department of Homeland Security issued a notice of proposed removal to MacLean. The agency alleged that MacLean's disclosure of the text message on July 29, 2003, violated 49 C.F.R. § 1520.7(j) (2003), which barred the disclosure of "sensitive security information." MacLean appealed his termination to the Merit Systems Protection Board.

During the proceedings before the MSPB, the Transportation Safety Agency issued a final order on August 31, 2006, regarding the text message. The order determined simply that, under the regulations in place in 2003, 49 C.F.R. § 1520.7(j), the text message contained "sensitive security information." There was no notice and comment period or other opportunity for MacLean to present evidence before the TSA issued the order. MacLean timely appealed the TSA's order. The MSPB has dismissed MacLean's appeal without prejudice pending the outcome of the appeal.

## DISCUSSION

### I.    Jurisdiction

Pursuant to 49 U.S.C. § 46110(c), we have jurisdiction to review only final agency "orders." We give "broad construction to the term 'order' in" § 46110, *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 929 (2007), but the TSA's classification of its own order as a

"final order" does not control our review, *see San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 968 (9th Cir. 1989). Generally, an order under § 46110 is reviewable if it " 'carries a note of finality, and applies to any agency decision which imposes an obligation, denies a right, or fixes some legal relationship.' " *Gilmore*, 435 F.3d at 1132 (quoting *Crist v. Leippe*, 138 F.3d 801, 804 (9th Cir. 1998)). We have explained that an agency decision qualifies as a final "order" under 49 U.S.C. § 46110 if it possesses four qualities: (1) it is supported by a "reviewable administrative record," (2) it is a " 'definitive' statement of the agency's position," (3) it has a " 'direct and immediate effect' on the day-to-day business on the party asserting wrongdoing," and (4) it " 'envisions immediate compliance with [the order's] terms.' " *See id.* (quoting *Crist*, 138 F.3d at 804).

We have jurisdiction to review the TSA order. First, the order is supported by a reviewable record, despite being only two pages. *See id.* at 1133 (a record may be adequate even if "little more than a letter" (internal quotation omitted)). Second, the order is a definitive statement of the TSA's position regarding the contents of the text message. Third, the order has an immediate and prospective impact on MacLean's challenge to his termination before the MSPB, despite the fact it applies to a three year-old text message. Fourth, the order requires compliance with its terms, especially in regards to the MSPB proceedings. The order "fixes some legal relationship" between MacLean and the agency and "carries a note of finality." *Id.* (citation omitted).

## II.   Standard of Review

We review de novo legal questions raised by the TSA's order. *See S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 677 (9th Cir. 1989). We review the TSA's findings for substantial evidence. *See* 49 U.S.C. § 46110(c). We may set aside the order if it is unconstitutional, contrary to law, arbitrary and capricious, *ultra vires*, or unsupported by substantial

evidence, *see* 5 U.S.C. § 706(2)(A)-(E), but we must also accord deference to an agency's interpretation of its own regulations, *see Alhambra Hosp. v. Thompson*, 259 F.3d 1071, 1074 (9th Cir. 2001). We may "affirm, amend, modify, or set aside any part of the order and may order the Secretary . . . to conduct further proceedings." 49 U.S.C. § 46110(c).

## III.    Permissible Agency Adjudication

MacLean contends that the TSA order is an incorrect application of 49 C.F.R. § 1520.7(j) (2003) and is unsupported by substantial evidence. We disagree.

**[1]** Section 1520.7(j) (2003) designates as "sensitive security information . . . [s]pecific details of aviation security measures . . . applied directly by the TSA . . . [which] includes, but is not limited to, information concerning specific numbers of Federal Air Marshals, deployments or missions, and the methods involved in such operations." Information falling within this designation is automatically considered "sensitive security information" without further action from the TSA. 49 C.F.R. § 1520.7 (2003). The TSA has authority to designate information as "sensitive security information" pursuant to 49 U.S.C. § 114(s) and 49 C.F.R. § 1520.

**[2]** The information contained in the text message qualifies as "sensitive security information." The message contained "specific details of aviation security measures" regarding "deployment and missions" of Federal Air Marshals. 49 C.F.R. § 1520.7(j) (2003). That there could have been more specific information in the message does not undermine this determination. *See id.* Given the deference owed to the agency, "an alternate reading is [not] compelled by the regulation's plain language." *See Alhambra Hosp.*, 259 F.3d at 1074 (quotation marks omitted).

**[3]** The order is also supported by substantial evidence. As we have stated, a record may be adequate even if it is "little

more than a letter." *Gilmore*, 435 F.3d at 1133. The TSA demonstrated an adequate factual basis on which to make its unremarkable determination that the text message contained "sensitive security information." MacLean has failed to demonstrate what more the TSA needed to show to support the order. The order is valid.

## IV.    Whistleblower Protection Act

MacLean contends that the order violates the Whistleblower Protection Act, 5 U.S.C. § 2302, by punishing him for making a protected disclosure.

**[4]** The Whistleblower Protection Act forbids the government from taking a "personnel action" against an employee who discloses information that the employee believes evidences:

> (i) a violation of law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,
>
>> if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs. . . .

5 U.S.C. § 2302(b)(8)(A). A "personnel action" includes disciplinary and corrective actions and removal actions. 5 U.S.C. § 2302(a)(2)(A)(iii); *see* 5 U.S.C. § 7512(1).

**[5]** The Whistleblower Protection Act does not apply to the order. The order is not a "personnel action," as required by the Act.[1] It is merely a determination that the text message

---

[1] Our review is jurisdictionally limited to the scope of the TSA's order. Accordingly, we do not consider whether MacLean was correctly termi-

contained "sensitive security information" pursuant to 49 C.F.R. § 1520.7(j). The fact that the order has some impact on MacLean's proceedings before the MSPB does not convert it to a "personnel action." We deny MacLean's claim.

## V. Anti-Gag Statute

MacLean contends that the order violates an appropriations bill known as the "Anti-Gag statute," Pub. L. No. 109-115, § 820, 119 Stat. 2396, 2500-2501 (2005).

**[6]** A private party may not sue under federal law unless it provides an express or implied cause of action. *See Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1021-23 (9th Cir. 2007). We look to congressional intent to determine whether an act contains an implied private cause of action. *See id.* at 1023. The Anti-Gag statute is an uncodified appropriations measure that provides no express cause of action. The relevant portion of the statute is a budgetary requirement that forbids the appropriation of funds "to implement or enforce the agreements in Standard Forms 312 and 4414 of the Government or any other nondisclosure policy, form, or agreement" unless a specific disclaimer is added. 119 Stat. at 2500.

**[7]** We also find nothing to support a holding that the Anti-Gag statute contains an implied cause of action, and MacLean has failed to make this argument. Thus, MacLean has not stated a claim on which relief may be granted.

Even assuming that such a cause of action exists, MacLean has not demonstrated that the order is a "nondisclosure policy, form, or agreement" to which the statute could apply. *Id.*

---

nated under the rules and regulations governing valid personnel actions, including the Whistleblower Protection Act. All such contentions may be brought before the MSPB in MacLean's challenge to his termination in that tribunal.

## VI.   Due Process

MacLean contends that the order violates due process by denying him the opportunity to raise objections during a notice and comment period before the order issued.

**[8]** Due process protects against the deprivation of "life, liberty, or property." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To be entitled to procedural due process, a party must show a liberty or property interest in the benefit for which protection is sought." *Greenwood v. FAA*, 28 F.3d 971, 975 (9th Cir. 1994) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480-81 (1972)). A notice and comment period is generally required for agency rulemaking, but not for adjudications. *See* 5 U.S.C. § 553; *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994). An agency adjudication may require a notice and comment period if it constitutes de facto rulemaking that "affects the rights of broad classes of unspecified individuals." *Cisneros*, 37 F.3d at 448.

**[9]** MacLean is not entitled to procedural due process. The order was the result of an agency adjudication, *see* 5 U.S.C. § 551(7) (defining an adjudication as an "agency process for the formulation of an order"), and does not directly deprive him of any liberty or property interests in his position as a Federal Air Marshal. It merely designates information as "sensitive security information," which has only a tangential relation to MacLean's interest in his position as an Air Marshal. MacLean may still contest his termination before the MSPB, where he may raise the Whistleblower Protection Act and contend that the lack of clarity of the TSA's 2003 "sensitive security information" regulations is evidence MacLean disseminated the text message under a good faith belief the

information did not qualify as "sensitive security information."

Likewise, the order did not affect the rights of a "broad class" of people, so no notice and comment period was required. *See Cisneros*, 37 F.3d at 448.

## VII.   Retroactive Agency Adjudication

Relying on *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988), MacLean contends that the order is an impermissible retroactive agency action. However, "[r]etroactivity is not favored in the law." *Id.* at 208. As a rule, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.*

[10] The TSA order does not constitute a retroactive agency adjudication. Rather, the agency applied regulations that were in force in 2003 to determine that information created in 2003 was "sensitive security information." This differs from *Bowen*, where the Court held that the Department of Health and Human Services could not apply a new rule requiring private hospitals to refund Medicare payments for services rendered before the rule existed. *See id.* at 208-09, 215-16. The TSA order comports with the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (internal quotation omitted). We reject MacLean's claim.

**PETITION FOR REVIEW DENIED**.