**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF LOS ANGELES, <br><br> Petitioner, <br><br> BENEDICT HILLS ESTATES ASSOCIATION; BENEDICT HILLS HOMEOWNERS ASSOCIATION, <br><br> Petitioners-Intervenors, <br><br> v. <br><br> FEDERAL AVIATION ADMINISTRATION; STEPHEN M. DICKSON, in his official capacity as Administrator, Federal Aviation Administration, <br><br> Respondents. | No.  19-73164 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Federal Aviation Administration

Argued and Submitted September 14, 2021
Pasadena, California

Before:  GOULD, BERZON, and COLLINS, Circuit Judges.

Los Angeles ("the City") seeks this court's review, under 49 U.S.C. § 46110,

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of a letter the Federal Aviation Administration ("FAA") sent the City in response to one the City sent the agency. In its letter, the City alleged the FAA had admitted to changing flight procedures—specifically, that it was now intentionally directing flights departing Hollywood Burbank Airport ("Airport") from Runway 15 to head further south before banking a turn north—and did not follow the requisite environmental and administrative procedures before making the change. The City requested that the FAA rescind the alleged change and direct air traffic controllers to follow previous protocols. The FAA's six-sentence letter in response ("FAA Letter") stated only that it did not earlier concede any changes to the air traffic control protocol for the Airport and that any southern shift in flight paths is due to factors built into the existing protocol, such as weather, pilot abilities, and air traffic volume and complexity.

49 U.S.C. § 46110(a) allows "a person disclosing a substantial interest in an *order* issued by . . . the Federal Aviation Administration" to seek review directly by a court of appeals. *Id.* (emphasis added). The term "order" in the statute has been interpreted to mean "final order," borrowing from the APA's requirement that a reviewable order be "the whole or part of a final disposition . . . of an agency in a matter other than rulemaking." *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989) (quoting 5 U.S.C. § 551(6)) (interpreting the statute at issue here by looking to the APA). Both parties agree that if the FAA Letter is not

a final order, we lack jurisdiction. Because we hold the FAA Letter was not a final order, we dismiss this matter for lack of jurisdiction.

When considering a purported final order, our overarching consideration is whether the document "imposes an obligation, denies a right, or fixes some legal relationship." *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1149 (9th Cir. 2008) (quoting *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006)). We use a four-part test to make the determination, asking whether the document has all of the following features:

> (1) it is supported by a reviewable administrative record, (2) it is a definitive statement of the agency's position, (3) it has a direct and immediate effect on the day-to-day business on the party asserting wrongdoing, and (4) it envisions immediate compliance with [the order's] terms.

*MacLean*, 543 F.3d at 1149 (cleaned up). The FAA Letter does not meet these requirements.

***Reviewable administrative record.*** We need not consider the first element because none of the other three elements is met.

***Definitive statement of the agency's position.*** The FAA Letter did not express a definitive agency position. Purported final orders that comment only "briefly and tentatively" upon a subject but do not "initiate an agency process" nor "specify the exact form" that subsequent action must take do not constitute definitive statements. *See Air California v. U.S. Dep't of Transp.*, 654 F.2d 616, 620-21 (9th Cir. 1981). The FAA Letter does not make a definitive statement of

3

the agency's position. It comments briefly upon an earlier statement made by the City, and it does so to the effect that the agency position remains what it was.

The most the FAA Letter does is disavow the City's interpretation of earlier statements an FAA employee made in a public forum. An agency's statement disputing an interested party's interpretation of an earlier agency statement is not the type of definitive statement of policy *MacLean* requires. *See, e.g.*, *MacLean*, 543 F.3d at 1149 (finding a definitive statement in an agency document determining the protected legal status of a contested message); *Gilmore*, 435 F.3d at 1131-33 (finding a definitive statement in an agency directive laying out a detailed security policy and how it should be implemented).

***Direct and immediate effect.*** The FAA Letter produced no direct and immediate effect. This conclusion follows from the second factor. The FAA Letter announced no new agency position that could have caused a change from the status quo. According to the FAA, air traffic controllers, before, during, and after the FAA Letter have followed the same procedure at the airport: they issue directions to pilots based on factors such as temperature and air traffic volume to keep flight paths separate. The FAA Letter had no bearing on this procedure other than to reaffirm it, so it "left the world just as it found it." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). "The Letter neither announced a new interpretation of the regulations nor effected a change in the regulations

4

themselves." *Id.* at 427.

*Immediate compliance.* Finally, from the foregoing it follows that the FAA Letter did not "envision[] immediate compliance" with its terms. *MacLean*, 543 F.3d at 1149 (citation omitted). The Letter contains no terms with which the FAA could have envisioned compliance.

In sum, we hold that the FAA Letter we are asked to review is not a final order, so we lack jurisdiction to review it. We cannot and do not decide whether the City could have raised its concerns about the current flight patterns around the Airport in a different manner that would have resulted in jurisdiction in this court or a district court to review those patterns. **PETITION DENIED.**