FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LASSANA MAGASSA, | No. 21-35700 |
| Plaintiff-Appellant, | D.C. No, 2:19-cv-02036-RSM |
| v. | |
| ALEJANDRO N. MAYORKAS, in his official capacity as Acting Secretary of the Department of Homeland Security; MERRICK B. GARLAND, Attorney General; DAVID PEKOSKE, in his official capacity as Administrator of the Transportation Security Administration; CHRISTOPHER WRAY, in his official capacity as Director of the Federal Bureau of Investigation; CHARLES H. KABLE IV, Director, in his official capacity as Director of the Terrorist Screening Center; MARK MORGAN, in his official capacity as acting Commissioner of US Customs and Border Protection; MINH TRUONG, in his individual capacity, | OPINION |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted July 7, 2022
Portland, Oregon

Before:  Ryan D. Nelson and Kenneth K. Lee, Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge R. Nelson;
Concurrence by Judge R. Nelson

## SUMMARY[**]

### 42 U.S.C. § 1981 / Jurisdiction

The panel affirmed the district court's dismissal of an action brought by Lassana Magassa, a former cargo customer service agent for Delta Airlines, claiming that the Transportation Security Agency ("TSA") revoked his security badge without explanation.

Magassa alleged the revocation resulted from his refusal to be an FBI informant, and sued for violations of the Administrative Procedure Act, 42 U.S.C. § 1981, and due process.  Magassa sued FBI Special Agent Truong in his individual capacity and the heads of the Department of Homeland Security, TSA, Customs and Border Protection, Department of Justice, FBI, and Terrorist Screening Center in their official capacities.

The panel held that § 1981 prohibited discrimination by state—but not federal—officials, and by nongovernmental actors.  The panel also held that the district court did not have jurisdiction to consider Magassa's challenge to the TSA's Redress Process because it fell within this court's exclusive jurisdiction under 49 U.S.C. § 46110, and that Magassa failed to establish a liberty interest to support his due process claims.

---

[*]      The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

[**]      This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

2

Specifically, the panel first considered Magassa's section 1981 claim against Special Agent Truong. First, the panel held that the district court improperly concluded that Magassa's claim was against Truong in his official capacity because Truong acted in his official capacity when he unlawfully flagged Magassa as a security threat. Magassa's § 1981 claim seeks damages from Truong as an individual, not as an arm of the sovereign. The panel concluded that the district court had jurisdiction to consider a § 1981 claim against Truong in his individual capacity. Second, the panel affirmed the dismissal of the claim against Truong in his individual capacity because Magassa failed to state a claim. The plain text of § 1981 does not provide a cause of action for discrimination by federal officials acting under color of state law. The panel also rejected Magassa's argument that Truong's conduct was "nongovernmental discrimination" under § 1981(c). Accordingly, Magassa failed to state a claim under § 1981.

Next, the panel considered Magassa's challenges to the procedures employed to revoke his badge and prevent him from learning the justification for the revocation, alleging violations of the APA and Due Process Clause. The panel affirmed the district court's dismissal for lack of jurisdiction, although for different reasons. The district court retains jurisdiction over challenges to TSA orders only when 49 U.S.C. § 46110 does not explicitly allow the Court of Appeals to hear them. The panel held that precedent suggested that the Redress Process was an "order" under the aviation-agency statute. Aviation agency decisions that satisfy the "final agency action" standard generally also satisfy the "agency order" standard, with two exceptions. Claims remain in district court if they (1) involve agencies not covered by § 46110 or (2) seek monetary damages. Neither of those exceptions applied because Magassa's APA claim was solely against the TSA and sought non-monetary relief in the form of a revised Redress Process. Challenges do not lie beyond § 46110 just because they are broad constitutional challenges to agency procedures. The panel held that Magassa sought relief in the form of a revised Redress Process—a type of relief authorized under § 46110. The district court thus lacked jurisdiction to review Magassa's APA claim.

The panel addressed Magana's procedural and substantive due process claims. First, the panel held that Magassa had Article III standing. Magassa sufficiently alleged injury where he alleged actions that may lead to an adverse security assessment and continued subjection to the Redress Process. Magassa also established traceability by plausibly alleging a causal connection between his injuries and the complained of conduct that was traceable to TSA's challenged action. Finally, court-ordered remedies could provide Magassa procedural safeguards not provided during the Redress Process.

The panel held that although Magassa had standing, he failed to state a procedural or substantive due process claim. Evaluating Magassa's procedural due process claim, the panel held that Magassa lacked a requisite valid liberty or property interest. Magassa did not have a liberty interest in working for the airlines: no right exists to a security clearance; and no protected interest exists in a job requiring one. Magassa sufficiently alleged that the government caused reputational harm when the TSA purportedly accused him of security violations and harassed him at work, but this was not enough without a right to a security clearance. Accordingly, Magassa's procedural due process claim failed. Magassa's substantive due process claim also failed where there is no right to a specific job.

Concurring, Judge R. Nelson wrote separately because precedent compelled the holding that the Redress Process was an "order" under 49 U.S.C. § 46110(a), but he believed that the precedent, which followed other circuits, was wrong. In his view, the plain meaning of "order," which § 46110 does not define, does not include agency procedures like the Redress Process. Under the term's plain meaning, jurisdiction over Magassa's challenge to the Redress Process might have been proper in the district court.

## COUNSEL

Christina A. Jump (argued), Allie J. Hallmark, Alyssa F. Morrison, and Charles D. Swift, Constitutional Law Center for Muslims in America, Richardson, Texas, for Plaintiff-Appellant.

Joshua Dos Santos (argued) and Sharon Swingle, Appellate Staff Attorneys; Nicholas W. Brown, United States Attorney; and Brian M. Boyton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

R. NELSON, Circuit Judge:

The Transportation Security Agency revoked the security badge of Lassana Magassa, a Delta Airlines agent, without explanation. Magassa, claiming that the revocation resulted from his refusal to be an FBI informant, sued for violations of the Administrative Procedure Act, 42 U.S.C. § 1981, and due process. We hold that § 1981 prohibits discrimination by state—but not federal—officials, and by nongovernmental actors. We also hold that the district court did not have jurisdiction to consider Magassa's challenge to the TSA's Redress Process because it falls within our exclusive jurisdiction under 49 U.S.C. § 46110, and that Magassa failed to establish a liberty interest to support his due process claims.

I

Lassana Magassa, a U.S. citizen and African-American Muslim, worked as a cargo customer service agent for Delta Airlines in Seattle.[1] Before starting with Delta, he completed background checks and interviewed with Customs and Border Protection (CBP) to obtain a security badge (called a Security Identification Display Area or "SIDA" badge). The badge signified that Magassa presented no threat to national security or transportation. During his background check, Magassa

---

[1] At the motion to dismiss stage, we accept Magassa's factual allegations as true and draw all reasonable inferences in his favor. *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022).

mentioned an interest in law enforcement and two CBP interviewers offered to send his resume to their colleagues.

After Magassa started with Delta, FBI Special Agent Minh Truong contacted him. They met over coffee for what Magassa believed would be a job interview. Instead, Truong invited Magassa to be a paid informant. Magassa declined but reaffirmed his interest in working as an agent or intern with the FBI.

Magassa was later approved for the Global Entry program (a CBP program that allows expedited clearance for pre-approved, low-risk international travelers). A few months after Magassa's Global Entry approval, Truong again tried to contact Magassa. They did not connect.

Magassa's airport troubles started during a trip to Paris and Berlin. First, he received an error message when he tried to check in for his return flight. Delta eventually rebooked him on another flight. But an alarm sounded when Magassa went to board. Security agents searched Magassa and his belongings, confiscated a pair of "small crochet scissors," and allowed him to board. Upon return to the United States, Magassa learned that his Global Entry privileges had been revoked. Over the next several hours, his boarding passes triggered more alarms, he endured additional searches, and he missed two flights. His boarding passes for both flights were marked "SSSS." Magassa believed that he was designated a security threat and

listed in the Terrorist Screening Database (colloquially called the "Terrorist Watch List").

When Magassa reached Seattle, his Delta supervisor, the head of Delta security, and an airport police officer met him at the gate. They said that Magassa's credentials had been revoked because his TSA status had changed and he could not return to work. Magassa was escorted from the airport. A few days later, he received a letter informing him that the Port of Seattle Aviation Security had revoked his security badge.

Anticipating termination, Magassa resigned. He received a formal notification of the TSA's "Initial Determination of Eligibility and Immediate Suspension," which stated that he "may no longer be eligible to hold airport-approved and/or airport-issued personnel identification media." After Magassa requested the documents that TSA relied on in its determination, he received heavily redacted documents that included a report from October 2016 (dated ten days after Magassa's return from Paris and one month after Truong's attempt to reconnect). None of the documents revealed substantive information on the TSA's assessment. The "case summary" and "basis of investigation" sections of the report were completely redacted.

Magassa timely challenged the TSA's initial assessment. The agency's Final Determination of Eligibility affirmed the initial assessment, and Magassa filed an

7

administrative appeal. His counsel (who held a Secret-level clearance) requested access to the classified information submitted by the TSA. After *in camera* review of the record, the administrative law judge (ALJ) denied the request and concluded that the TSA could not provide an unclassified summary of the information. But the ALJ also ordered the TSA to provide Magassa a redacted version of a report from June 2017. Magassa alleges that the 2017 report is only slightly less redacted than the 2016 report and provides no reason for revoking his airport privileges. Like the 2016 report, the 2017 report's "case summary" section was completely redacted.

The ALJ hearing was bifurcated into an unclassified portion (which Magassa attended) and a classified portion (which he did not). The ALJ found that the TSA's determination was supported by substantial evidence. Magassa requested review of the ALJ decision by the TSA Final Decision Maker. The Final Decision Maker concluded that the ALJ had applied the appropriate standard of review and properly limited Magassa's access to unclassified portions of the record.

About three weeks later, the agency withdrew its eligibility determination and concluded that Magassa was "eligible to maintain airport-issued identification media." It did not explain its earlier finding that Magassa was a security threat.

Magassa now works for a different airline in a similar position to the one he held at Delta. His employment depends on maintaining eligibility for a security

8

badge and airport privileges. He alleges that he continues to experience traveling delays and harassment by TSA personnel and remains on a government watch list.

Magassa sued Special Agent Truong in his individual capacity and the heads of the Department of Homeland Security (DHS), TSA, CBP, Department of Justice, FBI, and Terrorist Screening Center (TSC) in their official capacities. He alleges violations of his contractual rights under § 1981 by Truong and violations of the Administrative Procedure Act (APA) and Fifth Amendment by the other defendants in their individual capacities.

The district court dismissed Magassa's claim against Truong for lack of subject matter jurisdiction, reasoning that § 1981 applies to conduct by private or state—not federal—actors. It held that while its review was not barred by the jurisdictional statute in 49 U.S.C. § 46110, it lacked jurisdiction over the APA claim due to the lack of a final order. And it dismissed the Due Process claims for failure to state a claim, because Magassa had not established a protected liberty or property interest. This appeal followed.

II

We review de novo a district court's decision to dismiss for lack of jurisdiction or failure to state a claim, viewing factual allegations in the complaint as true and construing the pleadings in the light most favorable to the nonmoving party. *Navajo*

9

*Nation v. U.S. Dep't of the Interior*, 26 F.4th 794, 805 (9th Cir. 2022) (en banc); *Benavidez v. County of San Diego*, 993 F.3d 1134, 1141, 1144 (9th Cir. 2021).

III

We start with Magassa's claim against Special Agent Truong. Section 1981 of the Civil Rights Act prohibits intentional discrimination and promises "[a]ll persons" the right to "make and enforce contracts." 42 U.S.C. § 1981(a). The right "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). The statute provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c).

The district court concluded that Magassa's § 1981 claim challenged "actions taken in the course of [Truong's] official duties." According to the district court, Magassa essentially alleged that Truong, in his capacity as a federal agent acting under federal authority, interfered with Magassa's employment under color of federal—rather than state—law. It dismissed the claim for lack of subject matter jurisdiction because § 1981 provides no cause of action against federal agents acting under color of federal law.

On appeal, Magassa argues that § 1981 applies to "federal actors" (i.e., federal officials acting under color of federal law). In the alternative, he contends that Truong is a "nongovernmental" actor because he was sued in his individual capacity.

A

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted). Without a specific statute waiving immunity, there are three main exceptions to this rule: when the plaintiff alleges (1) constitutional violations in the official's scope of authority; (2) actions by an officer beyond his statutory authority; and (3) claims against officials in their individual capacities. *E.V. v. Robinson*, 906 F.3d 1082, 1091, 1098 (9th Cir. 2018); *see Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017).

The first two exceptions do not apply. Magassa alleges a violation of his right to contract, not a constitutional violation. Nor does he allege that Truong acted beyond his statutory authority. Rather, he accepts that Truong may flag individuals who are threats to national security but challenges the *reasons* for Truong's decision to flag him as such a threat.

The third exception, however, does apply. The government argues that Magassa's allegations do not assert a claim against Truong in his individual capacity

11

because they concern actions that he took under his position as a federal employee and under color of federal law. Even under the government's construction, Magassa plausibly asserts a claim against Truong in his individual capacity. When determining whether an official has been sued in his official or individual capacity, we examine the capacity in which the officer is sued, not the capacity in which the officer inflicts the alleged injury. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of . . . law." *Lewis*, 137 S. Ct. at 1291 (quoting *Hafer*, 502 U.S. at 25 (state officials)); *cf. Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (federal officials). "Officers sued in their personal capacity come to court as individuals, and the real party in interest is the individual, not the sovereign." *Lewis*, 137 S. Ct. at 1291 (citation, brackets, and quotation marks omitted).

The district court improperly concluded that Magassa's claim was against Truong in his official capacity because Truong acted in his official capacity when he unlawfully flagged Magassa as a security threat. *Hafer*, 502 U.S. at 26. Magassa's § 1981 claim seeks damages from Truong as an individual, not as an arm of the sovereign. We thus hold that the district court had jurisdiction to consider a § 1981 claim against Truong in his individual capacity.

12

B

That said, we affirm the district court's dismissal of the claim against Truong in his individual capacity because Magassa fails to state a claim. *See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008).

Magassa contends that § 1981's promise that "[a]ll persons" have the right to "make and enforce contracts" requires that the statute provide a cause of action against federal actors acting under color of federal law. 42 U.S.C. § 1981(a). The district court held that subsection (c) of the statute limits plaintiffs to claims against private parties and government officials acting under color of state law.

The plain text of the statute establishes that § 1981 does not provide a cause of action for discrimination by federal officials acting under color of federal law. *Id.* § 1981(c). Contractual rights under § 1981 are "protected against . . . impairment under color of State law." *Id.* We have already held that the "under color of state law" requirement in § 1983 "provides no cause of action against federal agents acting under color of federal law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995). Every circuit to decide the issue has extended the same logic to § 1981. *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1161 (10th Cir. 2000); *Davis v. U.S. Dep't of Just.*, 204 F.3d 723, 725–26 (7th Cir. 2000) (per curiam); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998).

Magassa argues that § 1981 encompasses officials acting under color of federal law because the statute originally derives from the Civil Rights Act of 1866.[2] He contends that the statute's purpose is to prohibit discrimination on the basis of race and national origin and that there is no reason to believe that Congress intended to preclude suits against federal actors. He also asserts that foreclosing federal-actor liability creates absurd tension with subsection (a)'s coverage of persons "in every State and Territory." Indeed, the D.C. Circuit has recognized the tension between subsection (a)'s broad promise and the narrower protection in subsection (c). *See Xia v. Tillerson*, 865 F.3d 643, 659 (D.C. Cir. 2017). But *Xia* explicitly declined to decide "whether the Civil Rights Act of 1991 affected section 1981's coverage of

---

[2] Prior to the 1991 amendments (adding subsections (b) and (c)), the Supreme Court examined the origins of similar statutes to determine their scope. *District of Columbia v. Carter*, 409 U.S. 418, 423 (1973). Because the federal government is beyond the purview of the Fourteenth Amendment, the Ku Klux Klan Act of 1871 (and therefore § 1983, which derived from the 1871 Act) does not address conduct by federal agents acting under color of federal law. *Id.* at 423–25. On the other hand, the Court has held that § 1982—derived from the 1866 Act and grounded in the Thirteenth Amendment—prohibits discrimination by the federal government. *See id.* at 422. It has never addressed whether § 1981 also applies to federal actors, but the statute's origins and basis in the Thirteenth Amendment suggest that it did—prior to 1991.

The Civil Rights Act of 1991 amended § 1981 in two ways. First, it added § 1981(b) to specify that the right to "make and enforce contracts" "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Second, it added § 1981(c), which declared that § 1981 rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law."

14

federal government discrimination." *Id.* Ultimately, Magassa's position is belied by the statutory text, which imposes liability for "nongovernmental discrimination" or discrimination "under color of State law." 42 U.S.C. § 1981(c). There is simply no cause of action under § 1981 against federal actors like Truong.

That leaves Magassa's argument that Truong's conduct is "nongovernmental discrimination" under § 1981(c). Magassa alleges that Truong personally retaliated against him by placing him on the Terrorist Watch List after he refused to act as an informant and interfered with Magassa's employment because of discriminatory animus. Magassa explains that he is seeking relief directly from Truong, rather than from the FBI.

According to Magassa, seeking relief directly from Truong means that Truong is a nongovernmental actor under § 1981. In support, he cites *Hafer* for the notion that courts rely on a plaintiff's assertions when determining whether defendant is sued in his official or individual capacity. In *Hafer*, former employees sued Pennsylvania's auditor general under § 1983 for improper termination. 502 U.S. at 23. The footnote cited by Magassa notes that the Third Circuit "looked to the proceedings below to determine whether certain respondents brought their claims . . . against Hafer in her official capacity." *Id.* at 24 n.*.

*Hafer*'s reasoning does not apply. First, *Hafer* discusses whether a defendant is a "person who . . . shall be liable" under § 1983. Section 1981, on the other hand,

15

does not name "persons" subject to liability. Second, *Hafer* undermines Magassa's argument that Truong is a "nongovernmental" actor because it repeatedly recognizes that Hafer—even if she can be sued as a "person" in her individual capacity—is a "government officer." *Id.* at 25, 27.

In any event, the text of the statute forecloses the possibility that Truong's actions as an FBI Special Agent are "nongovernmental discrimination." *See* 42 U.S.C. § 1981(c). Magassa's claims are grounded in allegations about what Truong did in his role as a federal agent, so they necessarily involve the government. Indeed, Magassa's alleged harms rely on the inference that the government has placed him on a watch list. Those actions cannot be "nongovernmental discrimination" and he therefore fails to state a claim under § 1981.

IV

Magassa also challenges the procedures employed to revoke his SIDA badge and prevent him from learning the justification for the revocation, alleging violations of the APA and Due Process Clause. These claims fail.

A

"Under the APA, agency action is subject to judicial review . . . when it is either: (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in a court.'" *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704). The district

16

court held that it lacked jurisdiction over Magassa's APA claim because, to the extent his claims survive the jurisdictional bar imposed by 49 U.S.C. § 46110, they are not reviewable under the APA for a lack of a final agency order. *See* 5 U.S.C. § 704; 49 U.S.C. § 46110. We affirm the district court's dismissal for lack of jurisdiction, although for different reasons.

1

A district court generally has jurisdiction to review challenges to agency action under the APA. Congress, however, has limited this jurisdiction by granting exclusive jurisdiction to federal courts of appeals to review the "orders" of certain aviation agencies (including the TSA, DHS, and Federal Aviation Administration (FAA), but not the TSC or FBI). *Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012). The Court of Appeals may "affirm, amend, modify, or set aside any part of the order" or remand to the agency for further proceedings. 49 U.S.C. § 46110(c). It lacks jurisdiction to grant other forms of relief.

The district court retains jurisdiction over challenges to TSA orders only when "§ 46110 does not explicitly allow [the Court of Appeals] to hear them." *Latif*, 686 F.3d at 1128 (quoting *Americopters, LLC v. FAA*, 441 F.3d 726, 735 (9th Cir. 2006)). We have held that district courts retain jurisdiction over claims against agencies *not* covered by § 46110 (e.g., the TSC) and claims for damages. *See, e.g., Crist v. Leippe*, 138 F.3d 801, 802–05 (9th Cir. 1998) (due process claim for damages);

17

*Foster v. Skinner*, 70 F.3d 1084, 1086–88 (9th Cir. 1995) (Fifth and Sixth Amendment *Bivens* claims); *Mace v. Skinner*, 34 F.3d 854, 856–60 (9th Cir. 1994) (same). And even in cases seeking damages, the district court's jurisdiction does not extend to damages claims "inescapably intertwined with a review of the procedures and merits surrounding the [agency's] order." *Latif*, 686 F.3d at 1128 (quoting *Americopters*, 441 F.3d at 736).

Magassa argues that the district court has jurisdiction over his APA claim because the Redress Process is a final agency action under the APA but not an order under § 46110. The government argues that his challenge lies within our exclusive jurisdiction because the Redress Process is a final order that "provides a 'definitive statement' of the agency's position" and "envisions immediate compliance with its terms." *See Crist*, 138 F.3d at 804 (quoting *Mace*, 34 F.3d at 857).

We must first decide whether the Redress Process is an "order" under the aviation-agency statute. Our precedent suggests that it is. Although seemingly not an "order" in the intuitive sense, we have essentially held that final agency actions under the APA are also orders under § 46110. Agency action is "final" under the APA if it "amounts to a definitive statement of the agency's position," "has a direct and immediate effect on the day-to-day operations of the subject party," or "immediate compliance with [its terms] is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quotation marks and brackets

18

omitted) (quoting *Indus. Customers of NW Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)). The action must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotation marks and citation omitted).

Likewise, agency decisions are agency orders under § 46110 if they "impose[] an obligation, den[y] a right, or fix[] some legal relationship." *Crist*, 138 F.3d at 804 (quoting *Mace*, 34 F.3d at 857). Qualifying orders (1) are supported by a "reviewable administrative record," (2) are a "definitive statement of the agency's position," (3) have a "direct and immediate effect on the day-to-day business of the party asserting wrongdoing," and (4) "envision[] immediate compliance with [their] terms." *MacLean v. DHS*, 543 F.3d 1145, 1149 (9th Cir. 2008) (quotation marks omitted) (quoting *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006)). At least three circuits have explicitly endorsed § 46110 jurisdiction to review agency rulemakings. *See, e.g.*, *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 56 (D.C. Cir. 2016); *Nw. Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1313–14 (8th Cir. 1981) (reviewing rule pursuant to 49 U.S.C. § 1486(a) (1980), § 46110(a)'s predecessor statute); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980) (same). Along with the Fourth Circuit, we have endorsed the principle implicitly. *See Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1147 (9th Cir. 2002)

19

(asserting jurisdiction over FAA rule without addressing scope of "order" in § 46110); *North Carolina v. FAA*, 957 F.2d 1125, 1127–28 (4th Cir. 1992) (same for § 1486(a)).

2

Under this framework, aviation agency decisions that satisfy the "final agency action" standard generally also satisfy the "agency order" standard. There are two exceptions: Claims remain in district court if they (1) involve agencies not covered by § 46110 or (2) seek monetary damages. *See, e.g.*, *Latif*, 686 F.3d at 1129 (district court jurisdiction over claim for relief involving TSA and TSC); *Crist*, 438 F.3d at 804 (district court jurisdiction over damages claims asserting constitutional violations by agency practices and procedures); *Mace*, 34 F.3d at 859 (district court jurisdiction when plaintiff seeks damages, asserts broad challenge to allegedly unconstitutional agency action, and complaint is not based on merits of revocation order).

Neither of these exceptions applies. Magassa's APA claim is solely against the TSA and seeks non-monetary relief in the form of a "revised . . . Redress Process."

Citing *Mace*, the district court held that "a district court maintains jurisdiction to hear broad constitutional challenges to the Government's actions." But we have held that § 46110 covers at least some facial constitutional challenges to TSA

procedures. *See, e.g., Gilmore*, 435 F.3d at 1130–31. In *Gilmore*, we held that § 46110 granted jurisdiction to review a constitutional challenge to a TSA "Security Directive" that required airlines to check passenger names against the No-Fly List. *Id.* at 1133. Two years later, we recognized § 46110 jurisdiction over a challenge to TSA "policies and procedures" implementing the No-Fly List. *Ibrahim v. DHS,* 538 F.3d 1250, 1256–57 (9th Cir. 2008). The district court distinguished these cases because they "addressed TSA directives that envisioned immediate compliance with direct effects on the day-to-day business of the parties" (in the form of required airline security protocols) and the TSA identified the directives as final orders subject to § 46110. It contrasted those procedures with the Redress Process, which "merely sets forth the process for challenging TSA's security threat assessments."

Indeed, the day-to-day impact of the Redress Process differs from that of the security directives in *Ibrahim* and *Gilmore*. But under our precedent, it is a distinction without significance. The Redress Process is codified in the Federal Register and governs the procedures by which claimants like Magassa may challenge their security designation and SIDA badge revocation. 49 C.F.R. § 1515.9. For example, it provides that, after an initial determination, claimants "may serve upon TSA a written request for copies of the materials upon which the Initial Determination was based." *Id.* §§ 1515.9(b); 1515.5(b)(2). The TSA must

21

then provide "releasable materials . . . on which the Initial Determination was based" but need not include classified or protected information. *Id.* § 1515.5(b)(3)(i).

By (1) setting the terms by which an applicant may challenge his security designation and (2) establishing agency disclosure obligations, the Redress Process imposes obligations and denies rights. *See Crist*, 138 F.3d at 804 (quoting *Mace*, 34 F.3d at 857). It is a definitive statement on the TSA's position on when and how it will tell applicants the reasons for its assessment, has a direct and immediate effect on the day-to-day business of applicants challenging their status, and envisions immediate compliance with its terms (once promulgated, applicants are bound by regulation requirements, including several sixty-day deadlines for requests and responses throughout the administrative appeals process). *See id.*; 49 C.F.R. § 1515.5(b)(2), (b)(3). To be sure, these requirements most obviously apply to orders that govern parties' substantive rights. But, under our precedent, they also apply to orders (such as the Redress Process regulations) that govern procedural rights and obligations.

Both Magassa and the district court compared Magassa's APA challenge to the challenge in *Mace*. Indeed, *Mace* challenged agency procedures more like the Redress Process. 34 F.3d at 856. It involved the FAA's revocation and notice procedures for aircraft mechanic certificates. *Id.* We held that the district court had jurisdiction to consider Mace's challenge, pointing to three distinctions between

22

cases in which we had exclusive jurisdiction. *Id.* at 858. First, Mace sought to recover damages—a remedy outside the scope of § 46110. *Id.* Second (and "[m]ore importantly"), his claim was "a broad challenge to the allegedly unconstitutional actions of the FAA" and two other agencies covered by § 46110. *Id.* Finally, the challenge was not "based on the merits of any particular revocation order." *Id.*

Like *Mace*, Magassa's claim involves "a broad challenge to . . . allegedly unconstitutional actions." *See id.* And it is not "based on the merits of any particular revocation order." *See id.* But we have already held that challenges do not lie beyond § 46110 just because they are broad constitutional challenges to agency procedures. *Crist*, 138 F.3d at 804 ("[A]lthough a broad constitutional challenge is a necessary predicate to district court jurisdiction, we must still determine whether Crist's claim was reviewable . . . under section 46110."). And we give "broad construction to the term 'order' in § 46110." *MacLean*, 543 F.3d at 1149 (quoting *Gilmore*, 435 F.3d at 1132). *Mace* therefore establishes an exception for broad constitutional challenges to agency procedures that seek damages. 34 F.3d at 858. In contrast, Magassa seeks relief in the form of a "revised [] Redress Process"—a type of relief authorized under § 46110. The district court thus lacked jurisdiction to review Magassa's APA claim.[3]

---

[3] Because Magassa does not ask us to transfer his claim to this court, we do not consider whether transfer is possible under 28 U.S.C. § 1631. *See Gilmore*, 435 F.3d at 1133–34.

B

Finally, we address Magassa's procedural and substantive due process claims. Although he has standing, he does not state a claim.

1

For Article III standing, Magassa must show "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (citation omitted).

Magassa sufficiently alleges injury via the "'invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent.'" *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). He asserts that ongoing exposure to the Redress Process makes it likely that his due process rights will again be violated. *See Melendres v. Arpaio*, 695 F.3d 990, 997–98 (9th Cir. 2012). As an airline employee, Magassa is subject to an ongoing security assessment. And he continues to experience security problems even after regaining his badge. One time, fellow employees gave Magassa permission to enter a secure area so he could retrieve luggage before boarding. Yet contract security claimed that Magassa had intentionally bypassed airport security and notified government officials. As a result, TSA officials stormed the breakroom asking employees if they had seen

24

Magassa, detained him, accused him of a security breach, temporarily confiscated his badge, and later told the airline to suspend and revoke his badge. Magassa thus alleges actions that may lead to an adverse security assessment and continued subjection to the Redress Process.

Magassa also establishes traceability because he plausibly alleges a "causal connection" between his injuries "and the conduct complained of" that is "traceable to the challenged action of the [TSA], and not the result of independent action of some third party not before the court." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560). Only after an adverse TSA assessment did Magassa lose his badge and job, and he is again subject to such assessments. Had the government provided Magassa with reasons for its revocation, given him access to relevant information, and offered him a meaningful chance to respond, Magassa could have challenged—and may be able to challenge, should the need arise—the adverse designation and the resulting lost wages and reputational harm. Moreover, Magassa's travel-related injuries are sufficiently linked to the TSA. According to the complaint, it is TSA—not some hypothetical third party, *see Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 834 (9th Cir. 2020)—that allegedly put him on a watch list.

Finally, declaratory or injunctive relief would "amount to a significant increase in the likelihood that [Magassa] would obtain relief that directly redresses"

25

his injury. *Mecinas*, 30 F.4th at 900 (citation omitted). As Magassa pleads, he is exposed to the risk of another adverse assessment without explanation. Court-ordered remedies could thus provide Magassa procedural safeguards not provided during the Redress Process. *See Fikre v. FBI* (*Fikre I*), 904 F.3d 1033, 1040 (9th Cir. 2018).

2

That said, we hold that Magassa fails to state a procedural or substantive due process claim. We address each in turn.

a

When evaluating Magassa's procedural due process claim, we weigh "(1) [his] liberty [or property] interests; (2) the risk of an erroneous . . . deprivation through the current traveler redress procedures, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest in national security, including the administrative burdens that additional procedural requirements would entail." *Kashem v. Barr*, 941 F.3d 358, 364, 377 (9th Cir. 2019); *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Because Magassa lacks a valid liberty or property interest, we need not reach the other factors.

Magassa claims two liberty interests: the freedom to work in his chosen profession and a reputational interest tied to his job. Magassa does not have a liberty interest in working for the airlines. Magassa's job requires him to have a security

26

badge to access the airport's sensitive areas. To get his badge, Magassa had to undergo extensive background checks and an interview with a government agent. Thus, he is like other workers who need security clearances to stay employed. *See, e.g.*, *Dep't of the Navy v. Egan*, 484 U.S. 518, 520 (1988) (submarine laborer who could not work on nuclear submarines because the government denied him a clearance); *Dorfmont v. Brown*, 913 F.2d 1399, 1400 (9th Cir. 1990) (defense contractor who lost her clearance and job). Yet the Supreme Court has held that no right exists to a security clearance, *Egan*, 484 U.S. at 528, and we have held that no protected interest exists in a job requiring one, *Dorfmont*, 913 F.2d at 1399.

We also deny Magassa's assertion that he has a liberty interest in his reputation. Under the "stigma plus" test, Magassa must show that the government has made stigmatizing statements and that he has lost something tangible, like his employment. *See Paul v. Davis*, 424 U.S. 693, 710 (1976). "[D]amage to reputation alone is not actionable." *Fikre v. FBI* (*Fikre II*), 35 F.4th 762, 776 (9th Cir. 2022) (citation omitted). Magassa sufficiently alleges that the government caused reputational harm when the TSA purportedly accused him of security violations and harassed him at work. But that is not enough. Without a right to a security clearance, *Egan*, 484 U.S. at 528, or a job that requires one, *Dorfmont*, 913 F.2d at 1403, his procedural due process claim fails.

27

b

Magassa's substantive due process claims also fails. Magassa asserts substantive rights to a job requiring a security clearance and a right to avoid reputational damage stemming from such a job. While we have recognized a substantive right for a generalized right to employment, there is no right to a specific job. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1079–80 (9th Cir. 2022). We affirm the dismissal of Magassa's due process claims.

V

We thus affirm the district court's dismissal of Magassa's § 1981 claim because the statute does not cover discrimination by federal actors. The district court lacked jurisdiction to consider his APA challenge to the Redress Process because Magassa does not seek damages and challenges the conduct of agencies covered under § 46110. Finally, Magassa fails to state a violation of due process because he has no liberty interest in maintaining employment that requires a security clearance.

**AFFIRMED.**

*Magassa v. Mayorkas*, No. 21-35770

NELSON, R., Circuit Judge, concurring:

I write separately because our precedent compels our holding that the Redress Process is an "order" under 49 U.S.C. § 46110(a). But our precedent, which follows other circuits, is wrong. In my view, the plain meaning of "order," which § 46110 does not define, does not include agency policies or procedures like the Redress Process. And here that matters, because under the term's plain meaning jurisdiction over Magassa's challenge to the Redress Process might have been proper in the district court.

I

The clearest indication that we read "order" too broadly comes from the Administrative Procedure Act (APA), which predates § 46110 and, unlike that statute, defines the term. *See* 5 U.S.C. § 551(6). Under the APA, "'order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter *other than rule making*." *Id.* (emphasis added). By excluding rulemakings, APA orders exclude "agency statement[s] of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.* § 551(4) (defining "rule"). Black's Law Dictionary captures that dynamic: An "agency order" is "[a]

1

*command or ruling* issued by an executive agency and directed to a person or entity over whom the agency has jurisdiction." *Agency Order*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Under the APA framework, then, the Redress Process—the procedures TSA employs to revoke airport workers' SIDA badges—is not an order but a rule.

That outcome goes against our holding. As our opinion recounts, rather than ask whether an agency action is an APA order, our test for a § 46110 order is just a test for finality. With a few exceptions, any final agency action will do.

## II

Why distinguish § 46110 orders from APA ones? We seem to have followed the lead of the D.C. Circuit, which first adopted a broad definition of "order" in the context of special-review statutes like § 46110 despite the term's plain meaning. *See Inv. Co. Inst. v. Bd. of Governors of the Fed. Res. Sys.*, 551 F.2d 1270 (D.C. Cir. 1977).

In *Investment Co.*, the D.C. Circuit, drawing on legislative history, held that review by a court of appeals of any "agency action capable of review on the basis of the administrative record" would best serve "the purposes underlying" the special-review statute. *Id*. at 1278. Those purposes included "permit[ting] agency expertise to be brought to bear on particular problems," and avoiding "'unnecessary duplication and conflicting litigation,' as well as the confusion

inherent in the prospect of different records and standards of review." *Id.* at 1279 (quoting *Whitney Nat'l Bank v. Bank of New Orleans*, 379 U.S. 411, 420–22 (1965) (reasoning why the court of appeals had exclusive jurisdiction over a claim arising from an order that followed an adjudicatory hearing)). The court held that it was "the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone." *Id*. at 1277 (citing *Deutsche Lufthansa AG v. Civ. Aeronautics Bd.*, 479 F.2d 912, 916 (D.C. Cir. 1973)). If a court of appeals could directly review an agency action without the need for factfinding by a district court, then, that action was an "order."

The D.C. Circuit's purposivist reasoning spread to this court. *See, e.g.*, *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 676 (9th Cir. 1989) ("[W]e may review a petitioner's claims regarding final agency action other than formal rulemaking [under § 46110's predecessor statute] so long as an administrative record adequate to permit evaluation of those claims exists.") (citing cases including *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979)). Neither were other circuits immune. *See, e.g.*, *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir. 1980) (citing *Investment Co.* and holding that "the purposes of special review statutes coherence and economy [sic] are best served if courts of appeals exercise their exclusive jurisdiction over final agency actions") (citation omitted); *Nw. Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1313 (8th Cir. 1981) (citing

3

*Sima Prods.* and *Investment Co.*).  Indeed, the *Investment Co.* line of cases is the authoritative source of law on this issue.

I find that reasoning unpersuasive, especially considering Congress's directive that § 46110 only divests the district courts of jurisdiction over orders.  Congress, not the courts, is best placed to decide how best to serve Congress's purposes.  And the language it enacted should be the starting and ending place for determining how it chose to do so.  An order, properly understood, should not include agency rules, policies, or procedures.

### III

A line of cases starting with *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), offers a better approach.  In *McNary*, the Court considered a special-review provision in the Immigration Reform and Control Act of 1986 that stripped federal courts of jurisdiction over "a determination respecting an application for adjustment of status" under the Reform Act's Special Agricultural Workers (SAW) amnesty program.  *Id*. at 491 (citing 8 U.S.C. § 1160(e)(1)).  The Court held that "'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions," so the judicial review bar precluded only "direct review of individual denials of SAW status."  *Id*. at 492.  The Court then noted that "had Congress intended the limited review provisions of [the special-review statute] to encompass challenges to [the

4

agency's] procedures and practices, it could easily have used broader statutory language." *Id*. at 494. Just as well here. If Congress wanted "order" to mean "final agency action," it could have said so in § 46110.

This does not mean that challenging an agency policy or procedure can be "an automatic shortcut" to district court jurisdiction where it would not otherwise exist. *See City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 872 (9th Cir. 2009). Instead, the procedural challenge must be a general, collateral challenge to an agency's procedures: A prevailing plaintiff would not receive direct relief, but only the benefit of having their case "reconsidered in light of the newly prescribed [] procedures." *McNary*, 498 U.S. at 495. And a plaintiff's "claims still must satisfy the jurisdictional and justiciability requirements that apply in the absence of a specific congressional directive." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993).

Aside from its fidelity to the text, *McNary*'s reasoning offers an advantage over the *Investment Co.* cases, including those from this circuit: A categorical rule. As first articulated, before stripping the district court of jurisdiction we required "an administrative record adequate to permit evaluation of [a petitioner's] claims." *S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 676. But that itself may require the court of appeals to make difficult factual determinations about when the administrative record supports direct review.

Our opinion in *Gilmore v. Gonzales,* 435 F.3d 1125 (9th Cir. 2006), illustrates that challenge. In *Gilmore*, we held that a challenged TSA security directive requiring airline passengers to present identification or be subject to search was a § 46110 order, so the district court lacked jurisdiction. *Id*. at 1133. The plaintiff alleged that airline security officials told him they could not disclose government regulations that required airlines to enforce the identification policy, and that the security directive was revised often, was transmitted orally, and differed according to airport. *Id*. at 1130. We stated that the administrative record required for § 46110 to apply "may consist of little more than a letter," and may be even more curtailed when evaluating certain agency policies or procedures, such as emergency rules. *Id*. at 1133 n.7. After reviewing *in camera* materials about the security directive submitted by the government under seal, we held that the directive was an "order" under § 46110.

Did we really have all the facts we needed to properly review the plaintiff's claims? Gilmore alleged, for example, that the security directive was revised often and transmitted orally. There is no indication it resulted from rulemaking procedures, like notice-and-comment, that would yield a robust record for review. It is conceivable that the records we reviewed *in camera* did not paint a full picture of the regulations to which Gilmore was subject. Had *McNary* governed that case,

6

the plaintiff may have had the opportunity to advance his claims by developing the record in the district court.

Applying *McNary* in the § 46110 context is not without precedent. In *Mace v. Skinner*, we noted that the plaintiff's claims, like those in *McNary*, were not based on the merits of his individual situation, but constituted a broad challenge to allegedly unconstitutional FAA practices. 34 F.3d 854, 859 (9th Cir. 1994). Granted, the plaintiff in *Mace* sought damages, a remedy not among those provided by § 46110. Still, we noted that in the context of such challenges, like the claims advanced in *McNary*, the available administrative record from his individual adjudication "would have little relevance." *Id*. And "any examination of the constitutionality of the [particular agency procedure] . . . is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" *Id*. (quoting *McCarthy v. Madigan*, 503 U.S. 140, 155 (1992)).

Our subsequent § 46110 cases did not continue to apply *McNary*. But they still appear to adopt some of its reasoning. In *Gilmore*, we wrote— contradictorily—that "[a]lthough the Security Directive is an 'order' within the meaning of 49 U.S.C. § 46110(a), the district court maintains jurisdiction to hear broad constitutional challenges to Defendants' actions." 435 F.3d at 1133 n.9. The district court would be divested only from jurisdiction if the broad challenge was "inescapably intertwined with a review of the procedures and merits

7

surrounding the . . . order." *Id*. (citing *Mace*, 34 F.3d at 858). We reiterated that point in *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012), where we noted that the district court's jurisdiction does not extend to damages claims "inescapably intertwined with a review of the procedures and merits surrounding the [agency's] order." *Id.* (quoting *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006)). That's exactly the approach *McNary* would have us take. Rather than strip the district court of jurisdiction over broad constitutional challenges because they are § 46110 "orders," applying *McNary*, we would ask whether those challenges— to agency policies or procedures, which would lie outside § 46110—were distinct enough from the merits of an individual adjudication that they would not constitute an impermissible collateral attack.

Hewing to the plain meaning of "order," rather than the atextual one we adopted from outside this circuit, would swap a purposivist and needlessly complicated approach to interpreting § 46110 in favor of a simple one that respects the lawmaking role of Congress. It would ensure proper judicial review of claims. Here, it might have provided Magassa a forum in district court.